459 S.E.2d 415

**CHRYSTAL R.M., Plaintiff Below, Appellant**

v.

**CHARLIE A.L., Defendant Below, Appellee.**

No. 22507.

Supreme Court of Appeals of West Virginia.

Submitted May 3, 1995.

Decided June 21, 1995.

Richard A. Bush, Bush & Trippel, Parkersburg, for appellant.

Jan Dils Hughes, Parkersburg, for appellee.

MILLER, Justice:

In this appeal, we are asked to determine whether language by the mother in a written prenatal adoption agreement stating that the adoptive father is the natural father should prevail over blood tests that prove a third person, the appellee, Charlie A.L., is the biological father.[1] By agreement dated January 8, 1990, the appellant, Chrystal R.M., consented to allow Mr. and Mrs. Ruble to adopt her child. In the agreement, the appellant stated that she "hereby acknowledges that Gregory Emmitt Ruble, ... is the natural father of said child and agrees to place his name on the initial birth certificate and necessary hospital records at the time of her admission for the birth of the child."[2] The adoption was never consummated.

■ In June of 1991, the appellant filed suit against the appellee asserting that he was the biological father, and seeking child support, reimbursement of birth expenses, and attorney fees.[3] The family law master eventually ordered blood tests to determine the paternity issue. They revealed that Mr. Ruble was not the biological father and that there was a 99.94% probability that the appellee, Charles A.L., was the biological father.

The appellee defended against the paternity action by asserting that the signed and notarized adoption agreement between Mr. and Mrs. Ruble and Chrystal R.M., stating that Mr. Ruble was the father, met the requirements of *W.Va.Code*, 48A–6–6(b) (1990) which states:

A written acknowledgment by both the man and woman that the man is the father of the named child legally establishes the man as the father of the child for all purposes and child support can be established under the provisions of this chapter.

■ The family law master concluded that this section was designed to establish paternity where the mother and the putative father acknowledged his paternity, but was not meant to cover adoption agreements. On review, the circuit court determined that the language in the adoption agreement met the requirements of *W.Va.Code*, 48A–6–6(b) (1990). This appeal clearly presents a question of law involving an interpretation of a statute. Accordingly, we apply the *de novo* standard of review as set out in syllabus point 1, in part, of *Burnside v. Burnside*, (No. 22399, March 24, 1995) which states that "questions of law and statutory interpretations are subject to a *de novo* review."[4]

---

1. In accord with our prior practice, we do not use the last names of the parties in domestic cases that involve sensitive facts. See e.g. *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994); *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 356 S.E.2d 464 (1987).

2. The relevant language of the adoption agreement was:

The party of the second part hereby acknowledges that Gregory Emmitt Ruble, one of the parties of the first part hereto, is the natural father of said child and agrees to place his name on the initial birth certificate and necessary hospital records at the time of her admission for the birth of the child.

3. The right to recover these items as a part of a paternity action is statutory as we explained in *Kathy L.B. v. Patrick J.B.*, 179 W.Va. 655, 371 S.E.2d 583 (1988).

4. The entire text of syllabus point 1 of *Burnside v. Burnside, supra*, is:

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of

Initially, the appellant argues that the applicable language in the adoption agreement is void and unenforceable citing *Wyatt v. Wyatt*, 185 W.Va. 472, 475, 408 S.E.2d 51, 54 (1991). There we said that "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support." We do not find *Wyatt* to be applicable simply because the contract for adoption was not consummated. Consequently, the mother neither waived nor contracted away the child's right to support.

We disagree with the legal basis of the circuit court's opinion that under *W.Va.Code*, 48A–6–6(b) (1990), there had been a formal acknowledgment of paternity. We do not believe that this subsection has some talismanic meaning that requires us to abandon both our logic and common sense. From a purely technical viewpoint, it can be said that the adoption agreement did not carry the "written acknowledgment by both the man and woman" as required by this subsection. Certainly, Mr. Ruble did not admit that he was the natural father because as earlier noted, this statement was made only by the natural mother.[5]

Of more importance, it must be remembered that this was an adoption agreement and it is within this context that we judge its purpose. The purpose of *W.Va. Code*, 48A–6–6(b) (1990), allowing for acknowledgment of paternity by written agreement, is to enable the biological father to acknowledge this fact without the necessity of going through an expensive and often protracted hearing to establish paternity. This can be seen by reading *W.Va.Code*, 48A–6–6(a) (1990), which outlines the more cumbersome procedures that must be followed by a putative father seeking to establish paternity.[6]

Moreover, the paternity section, *W.Va.Code*, 48A–6–1 *et seq.* (1993) is separate and distinct from the adoption section, *W.Va. Code*, 48–4–1 *et seq.* (1985). They serve two entirely different interests, and because of this they are not considered to be in *pari materia*. We discussed the concept of in *pari materia* at some length in *Manchin v. Dunfee*, 174 W.Va. 532, 535–36, 327 S.E.2d 710, 713–14 (1984) and observed that it was a rule of statutory construction. We acknowledged the rule meant that "[s]tatutes which relate to the same subject should be read and applied together. . . ." 174 W.Va. at 535, 327 S.E.2d at 713. We went on in *Manchin*, to recognize the corollary to the rule as set out in syllabus point 1 of *Atchinson v. Erwin*, 172 W.Va. 8, 302 S.E.2d 78 (1983) stating that "[s]tatutes relating to different subjects are not in pari materia. [Citations omitted.]" Consequently, we customarily do not consider language in paternity statutes to be applicable to adoption agreements.

Finally, from a public policy standpoint, we do not believe that *W.Va.Code*, 48A–6–6(b) (1990) can be used to thwart the rights of a natural father. It would be unjust to allow the biological mother to join with another man who is not the biological father and file an acknowledgment under this section which would bar the rights of the biological father. As evidenced by *Simmons v. Comer*, 190

---

law and statutory interpretations are subject to a *de novo* review.

As the syllabus in *Burnside* indicates, the circuit court had concurred with the family law master's findings. However, where a disagreement exists as in this case and the issue is one of law a *de novo* review is still the correct standard.

5. For the text, *see supra*, note 2. The *appellant*, Chrystal R.M., stated in the adoption agreement that Mr. Ruble was the natural father. However, Mr. Ruble never explicitly claimed he was the father of Chrystal R.M.'s child.

6. *W.Va.Code*, 48A–6–6(a) (1990) states:
   The natural father of a child may file an application to establish paternity in circuit court when he acknowledges that the child is his or when he has married the mother of the child after the child's birth and upon consent of the mother, or if she is deceased or incompetent, or has surrendered custody, upon the consent of the person or agency having custody of the child or of a court having jurisdiction over the child's custody. The application may be filed in the county where the natural father resides, the child resides, or the child was born. The circuit court, if satisfied that the applicant is the natural father and that establishment of the relationship is for the best interest of the child, shall enter the finding of fact and an order upon its docket, and thereafter the child is the child of the applicant, as though born to him in lawful wedlock.

W.Va. 350, 438 S.E.2d 530 (1993), we have been reluctant to accord a nonbiological father any preferential standing. *Simmons* dealt with the right of a putative father to claim a parental relationship with a child whose natural mother had represented to him that he was the biological father; she then rejected his attempt to sustain a continuing relationship with the child.

 Of more direct importance, however, is the constitutional right accorded to the biological parent not to be deprived of his paternal right without notice and some appropriate due process hearing, as we explained in *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973), *relying on, Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *see also In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993); *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). *But see Michael H. v. Gerald D.,* 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). Thus, we conclude that statements by the natural mother in an adoption agreement that the adoptive father acknowledges paternity, when the adoption agreement is subsequently not consummated, does not constitute an acknowledgement of paternity under *W.Va.Code,* 48A–6–6(b). Therefore, such statements do not bar a proceeding on her part against the actual biological father to establish paternity.

 In the final analysis, this case involved a paternity issue. Blood tests were ordered under *W.Va.Code,* 48A–6–3 (1992) and, as earlier noted, the appellee was found by a 99.94% probability to be the father and the tests excluded Mr. Ruble. Under *W.Va. Code,* 48A–6–3(a)(3) (1992), such an undisputed finding, when filed, "legally establish(es) the man as the father of the child for all purposes...."[7] Recently, in acknowledgement of this section, we stated in syllabus point 5 of *Mildred L.M. v. John O.F., supra,* note 1:

> Under W.Va.Code, 48A–6–3 (1992), undisputed blood or tissue test results indicating a statistical probability of paternity of more than ninety-eight percent are conclusive on the issue of paternity, and the circuit court should enter judgment accordingly.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Wood County and remand this case for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

7. *W.Va.Code,* 48A–6–3(a)(3) (1992) states:

Undisputed blood or tissue test results which show a statistical probability of paternity of more than ninety-eight percent shall, when filed with the court, legally establish the man as the father of the child for all purposes and child support may be established pursuant to the provisions of this chapter.