727 S.E.2d 847

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**David D. GRIFFY, Defendant Below, Petitioner.**

**No. 11–0533.**

Supreme Court of Appeals of West Virginia.

Submitted May 23, 2012.

Decided June 8, 2012.

---

Charles B. Mullins, II, Esq., Mullins Law Office, Pineville, for Petitioner.

Darrell V. McGraw, Jr., Esq., Attorney General, Thomas W. Rodd, Esq., Assistant Attorney General, Charleston, for Respondent.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Raleigh County entered on February 23, 2011. In the final order, the circuit court denied a motion for reconsideration of sentence and a motion to withdraw plea filed by David D. Griffy, the petitioner herein and defendant below (hereinafter "Mr. Griffy"). Mr. Griffy was sentenced on July 16, 2010, to two indeterminate one-to-ten year terms of imprisonment pursuant to his guilty plea to two counts of grand larceny. Mr. Griffy argues in this appeal that the circuit court committed reversible error by failing to comply with

Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure.

This Court has before it the parties' briefs, the submitted appendices and the argument of counsel. For the reasons set forth below, the final order is reversed, and this case is remanded to the circuit court with instructions.

## I. FACTS

On February 21, 2007, Mr. Griffy allegedly broke into the Whitesville, West Virginia, detachment of the West Virginia State Police and stole equipment from a storage room. On August 6, 2007, Mr. Griffy allegedly broke into property owned by Interstate Machinery in Raleigh County, West Virginia, and stole mining equipment. Subsequently, Mr. Griffy was indicted for these alleged offenses. On January 14, 2008, he was charged with one count of breaking and entering for the February 21, 2007, incident. On September 8, 2008, he was charged with one count each of trespassing, grand larceny, destruction of property, transferring stolen property, and conspiracy as a result of the August 6, 2007, incident.

At the time of the alleged offenses, Mr. Griffy was on parole pursuant to a 2003 conviction that occurred in Boone County, West Virginia. Mr. Griffy's parole was revoked in April 2009 because of the Raleigh County charges, and he was incarcerated. Plea discussions between Mr. Griffy and the Raleigh County Prosecutor's office began in January 2010. Letters were then exchanged concerning the proposed plea agreement. In that regard, the prosecution sent a letter to counsel for Mr. Griffy on February 24, 2010, which stated:

This letter is to confirm our recent telephone conversation about a final global resolution to both of Mr. Griffy's cases. The deal is as follows: Your client will plead Guilty to Grand Larceny, as a lessor [sic] included offense under the Breaking & Entering charge in Indictment 08–F–92–H, and your client will plead Guilty to the Grand Larceny charge as listed in Count 2 of the Indictment 08–F–370–B, with the State dismissing all remaining charges, and agreeing not to seek recidi-

vist charges against your client, and standing mute as to sentencing, except to request restitution of all charges.

Counsel for Mr. Griffy then sent a letter to the prosecutor on March 24, 2010, which stated:

I have been authorized on behalf of Mr. Griffy to propose the following PLEA OFFER under the following terms and conditions:

- [Mr. Griffy] will enter a Rule 11(e)(1)(B) plea of guilty to the lessor [sic] included offense of Grand Larceny as contained in Indictment 08–F–92–H and be sentenced to One (1) year, to run *concurrent* with the time now being served by the [Mr. Griffy] on a parole revocation;

- [Mr. Griffy] will enter a Rule 11(e)(1)(B) plea of guilty to Count 2, Grand Larceny, as contained in Indictment 08–F–370–B and be sentenced to One (1) year, to run *concurrent* with the time now being served by [Mr. Griffy] on a parole revocation;

- All remaining counts will be dismissed *with prejudice;*

- Both one (1) year sentences mentioned above will run *consecutively;*

- The State will remain silent as to sentencing and in exchange [Mr. Griffy] will not ask for any alternate sentence or early release;

- Costs will be assessed pursuant to law.

A plea hearing was held on April 23, 2010.

At the plea hearing, the prosecution and counsel for Mr. Griffy described the plea agreement to the circuit court as follows:

[MR. MULLINS]: And what we offered, Your Honor, was two counts of grand larceny that, as [the prosecutor] has said, carry a one to ten [year sentence] or a flat one [year sentence]. We wanted to argue to the Court for the flat ones to run consecutively, which would be a two-year flat sentence, and that sentence to run concurrent with this parole revocation which he told you about earlier.

He's been incarcerated since April, we believe on this charge, and is entitled to credit for time served, and then he still

owes the State approximately another year, maybe 13 months, maybe a little longer, on his parole revocation.

So that's the way we understand our offer to the State. We understand the State's position that they're just going to—that you either take it or reject it.

THE COURT: Well, take it or reject it, my first question for you is whether there's any understanding as to whether the Court should go forward without a presentence investigation. I usually do require one, unless they're effectively waived.

MR. MULLINS: Well, Your Honor, I believe because of the fact that he's going to jail no matter what happens ... we want to go forward and go ahead and have the sentencing and have this matter concluded, if the Court's willing to do that.

THE COURT: Mr. Truman, what does the State say to that proposition?

[THE STATE]: Well, that is not the State's understanding. The State's understanding is that [Mr. Griffy] could argue for alternative sentencing but that he was entering his plea with the risk that the [c]ourt could impose one to ten concurrent, could impose one to ten consecutive, could impose one year on each concurrently, run all that concurrent to his current charges or consecutive to his current charges.

The circuit court then responded by saying, "Let me let that gel awhile while you—and ask you now to recite the factual basis for these charges." Thereafter, without any further discussion regarding the terms of the plea agreement and whether it was a binding or non-binding agreement, the circuit court accepted Mr. Griffy's plea of guilty to two counts of grand larceny. Subsequently, an order dated April 27, 2010, memorializing the court's acceptance of Mr. Griffy's guilty plea, was entered which indicated that Mr. Griffy's plea was made pursuant to an agreement in accord with West Virginia Rule of Criminal Procedure 11(e)(1)(B).[1]

Mr. Griffy's sentencing hearing was held on July 16, 2010. Mr. Griffy, by counsel, asked that the court sentence him to two determinate one-year sentences, as opposed to two indeterminate one-to-ten year sentences, because of the effect on his parole eligibility. Mr. Griffy's counsel indicated that it was his understanding that Mr. Griffy would be able to withdraw his guilty plea if the court did not give him two determinate one-year sentences. A discussion then ensued with regard to whether the plea was entered pursuant to Rule 11(e)(1)(B) or Rule 11(e)(1)(C)[2] of the West Virginia Rules of Criminal Procedure. Ultimately, the court concluded the hearing by sentencing Mr. Griffy to two indeterminate one-to-ten year sentences for two counts of grand larceny. The court ordered that the sentences run consecutively with each other, but concurrently with the sentence Mr. Griffy was serving for his Boone County conviction as a result of his parole revocation.

On November 8, 2010, Mr. Griffy filed a Motion for Reconsideration of Sentence pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure.[3] A hearing

1. Rule 11(e)(1)(B) of the West Virginia Rules of Criminal Procedure provides, in pertinent part:
   (1) In general. The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the state will do any of the following:
   ....
   (B) Make a recommendation or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court[.]

2. Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure provides, in pertinent part:

   (1) In general. The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the state will do any of the following:
   ....
   (C) Agree that a specific sentence is the appropriate disposition of the case[.]

3. Rule 35 of the West Virginia Rules of Criminal Procedure states:
   (a) *Correction of Sentence.*—The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time period provided herein for the reduction of sentence.

was held on the motion on February 14, 2011, although Mr. Griffy did not attend.[4] During the hearing, Mr. Griffy's counsel stated that he had advised his client that if the court did not sentence him to two determinate one-year sentences, then he would be allowed to withdraw his guilty plea. Mr. Griffy's counsel asked the court to allow Mr. Griffy to withdraw his guilty plea and proceed to trial. On February 23, 2011, the circuit court issued its final order denying Mr. Griffy's Rule 35 motion and denying his request to withdraw his plea. This appeal followed.

## II. STANDARD OF REVIEW

Mr. Griffy asserts in this appeal that the circuit court committed reversible error by failing to comply with a specific rule of criminal procedure. This Court has held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). This Court has also stated that a circuit court's final order and ultimate disposition are reviewed under the abuse of discretion standard. Syllabus Point 1, *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997). With these standards in mind, the parties' arguments will be considered.

## III. DISCUSSION

In this appeal, Mr. Griffy assigns as error the circuit court's failure to comply with Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure. The rule provides:

> If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause,

in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A), (C), or (D), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. *If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea.*

W.Va.R.Crim.P. 11(e)(2) (emphasis added). Mr. Griffy states that the circuit court failed to advise him that if the court chose not to accept the requested sentence, he would have no right to withdraw his guilty plea. He argues that the circuit court's failure to give him the Rule 11(e)(2) warning constitutes reversible error.

In response, the State acknowledges that the circuit court failed to comply with Rule 11(e)(2). The State argues, however, that because Mr. Griffy is asserting this error for the first time on appeal, having never brought the failure to give the warning to the circuit court's attention in any motion or during any of the proceedings below, the issue has not be properly preserved for appellate review and, therefore, is waived.

Alternatively, the State contends that the circuit court's failure to give the requisite Rule 11(e)(2) warning is, at most, harmless error. In that regard, the State points out that in Syllabus Point 3 of *State v. Valentine*, 208 W.Va. 513, 541 S.E.2d 603 (2000), this Court held that "[t]he omission of the statement required by Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure must be deemed harmless error unless there is some realistic likelihood that the defendant

(b) *Reduction of Sentence.*—A motion to reduce a sentence may be made, or the court may reduce a sentence without motion within 120 days after the sentence is imposed or probation is revoked, or within 120 days after the entry of a mandate by the supreme court of appeals upon affirmance of a judgment of a conviction or probation revocation or the entry of an order by the supreme court of appeals dismissing or rejecting a petition for appeal of a judgment of a conviction or probation revo-

cation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

4. A defendant's presence at such a hearing is not required. *See State v. Conley*, 168 W.Va. 694, 285 S.E.2d 454 (1981).

labored under the misapprehension that his plea could be withdrawn." [5] The State argues that, absent affirming the order the circuit court, this case should be remanded to allow the circuit court to determine whether Mr. Griffy entered his guilty plea under the misapprehension that he could later withdraw his plea if the sentence he received was not in accord with his expectations.

This Court first addressed the failure of a circuit court to comply with Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure in *State v. Cabell*, 176 W.Va. 272, 342 S.E.2d 240 (1986). In that case, the defendant agreed to plead guilty to aggravated robbery and burglary pursuant to a plea agreement whereby the State agreed to seek dismissal of the remaining counts in the indictment and to recommend a thirty-year sentence for the aggravated robbery charge. Before accepting the defendant's guilty plea, the court explained to him that it was not bound in any respect by the prosecutor's sentencing recommendation. The court, however, did not advise the defendant that if it decided not to accept the sentencing recommendation, the defendant would nonetheless have no right to withdraw his plea as provided in Rule 11(e)(2). Thereafter, at a subsequent sentencing hearing, the court sentenced the defendant to sixty years of imprisonment on the aggravated robbery charge. The defendant then sought to withdraw his guilty plea.

■ In considering the defendant's appeal in *Cabell*, this Court was guided by several decisions from other jurisdictions which had decided this precise issue and concluded that when the warning is not given, the defendant should be afforded the opportunity to plead again. This Court also considered the fact that the acceptance of a guilty plea often consists of a two-step process, explaining:

"Under Rule 11 of the West Virginia Rules of Criminal Procedure a trial court is not foreclosed from accepting a plea, which is made pursuant to a plea agreement, and conditioning its acceptance upon the receipt of a presentence report. After considering the presentence report, the trial court may reject the plea agreement, in which event it shall permit the defendant to withdraw his plea, pursuant to the procedure outlined in Rule 11(e)(4) of the West Virginia Rules of Criminal Procedure."

If the court does conditionally accept the plea, the second stage is then the sentencing hearing. As we pointed out in *Myers*, if the trial court determines, after receipt of the presentence report, that the plea bargain is inappropriate, it may reject it at this point and permit the defendant to withdraw his guilty plea.

*Id.* at 277, 342 S.E.2d at 244 (quoting Syllabus Point 14, *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782 (1984)). Accordingly, this Court held in Syllabus Point 2 of *Cabell* that:

A trial court has two options to comply with the mandatory requirements of Rule 11(e)(2) of the West Virginia Rules of Criminal Procedure. It may initially advise the defendant at the time the guilty plea is taken that as to any recommended sentence made in connection with a plea agreement, if the court does not accept the recommended sentence, the defendant will have no right to withdraw the guilty plea. As a second option, the trial court may conditionally accept the guilty plea pending a presentence report without giving the cautionary warning required by Rule 11(e)(2). However, if it determines at the sentencing hearing not to follow the recommended sentence, it must give the defendant the right to withdraw the guilty plea.

■ In this case, it is undisputed that the circuit court did not exercise either of the two options set forth in *Cabell*. Likewise, it is undisputed that the circuit court's failure to give the requisite warning was not brought to the court's attention and that the issue is being raised for the first time in this appeal. Consequently, the State has argued that the alleged error has been waived. It is

---

**5.** Rule 11(h) of the West Virginia Rules of Criminal Procedure also states:

*Harmless Error.*—Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

in fact well-established that "[o]rdinarily, a party must raise his or her objection contemporaneously with the trial court's ruling to which it relates or be forever barred from asserting that that ruling was in error." *State v. Whittaker*, 221 W.Va. 117, 131, 650 S.E.2d 216, 230 (2007). This Court has recognized, however, that "[t]he 'raise or waive' rule is not absolute where, in extraordinary circumstances, the failure to object constitutes plain error." *Id.* at 131 n. 18, 650 S.E.2d at 230 n. 18. "The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made." *State v. Miller*, 194 W.Va. 3, 18, 459 S.E.2d 114, 129 (1995). This Court has held that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *Miller*.

▉ Upon review, this Court finds that the facts and circumstances of this case warrant application of the plain error doctrine. Although this Court held in *Valentine, supra,* that the harmless error rule could be applied when a court failed to give the Rule 11(e) warning, it was also made clear that when the substantial rights of the defendant are affected, such omission constitutes reversible error.[6] In this case, it is obvious from the record that Mr. Griffy labored under the misapprehension that his plea could be withdrawn. At his sentencing hearing, the following colloquy occurred between the court and Mr. Griffy:

THE COURT: Well, Mr. Griffy, as you are aware from having seen at least one sentencing today and perhaps having gone through a couple of them yourself already, you know you have the right to be heard, the right of elocution. Do you want to speak to the Court?

THE DEFENDANT: No, not really. I don't have much to say, but my understanding of the plea was—when you accepted it, you know, that I was going to get two one-year sentences, the last time I was here, and you accepted it but you still wanted to do the PSI [pre-sentence investigation] for some reason. I don't know why.

THE COURT: All right. So you think the agreement is the two flat one-year sentences?

THE DEFENDANT: I thought that was how it was wrote up.

THE COURT: Where did you get that idea from?

THE DEFENDANT: I mean I thought I was—I mean I'm reading in the law book too, if I pled to the Rule–Rule 11–what, Rule 11(C)?

THE COURT: So are you telling me you think you have an agreement that the sentence, under Rule 11(e), the one that binds the Court, if that's how you want to put it, that the sentence would be two one-year sentences as distinguished from two one-to-ten sentences?

THE DEFENDANT: Yeah, my understanding.

THE COURT: Who told you that?

THE DEFENDANT: My understanding, if I didn't get that, I could withdraw my plea.

Later, during the hearing, after discussion regarding whether the plea was made pursuant to Rule 11(e)(1)(B) or 11(e)(1)(C), counsel for Mr. Griffy stated:

I thought there was a provision that allowed the Defendant to ask the Court for disposition and the State did not have to take a position and, if the Court was willing—or not willing, excuse me, to accept the Defendant's offer, that the Defendant could withdraw and go back to the place where he was, and, in fairness to the Defendant, Your Honor, I've never shirked away from my responsibility, that's what I told him. I told him that my understanding was is that the State is not going to speak against you, the State is not going to help you either, but the State is going to allow us to ask the Judge to give you two

---

6. Syllabus Point 2 of *Valentine* states:
   The harmless error rule of Rule 11(h) of the West Virginia Rules of Criminal Procedure should be applied when the factual evidence is clear that no substantial rights of the defendant were disregarded.

one-year flat sentences, and if those are not accepted, then you are reverted back and you could go have your trial, which I think you are crazy to do but you have that right, I thought that was later on under Rule 11.

Finally, immediately before sentencing, the court again asked Mr. Griffy if he had anything to say about himself or the situation. Mr. Griffy responded:

Well, I mean, I signed a (B) plea and I didn't realize I was signing a (B) plea. I mean I though I had the option to withdraw from my plea or I probably would have never signed that plea.

Based on the above, it is clear that the substantial rights of Mr. Griffy were affected by the circuit court's failure to give the Rule 11(e)(2) warning. It is evident that Mr. Griffy did not understand that when he pled guilty that he would not be allowed to later withdraw his plea if his sentence did not meet his expectations. Unlike the defendant in *Valentine* who had signed a form indicating that he understood that he could not withdraw his plea for any reason once it was accepted, there is no evidence in this case that Mr. Griffy was ever given the Rule 11(e)(2) warning. Therefore, given these particular circumstances, we must reverse the final order of the circuit court.[7]

In *Cabell,* this Court noted that "most federal cases follow the remedy of permitting the defendant to plead anew." 176 W.Va. at 277, 342 S.E.2d at 244. This Court ultimately determined, however, that the more practical approach is to remand the case and give the circuit court the option of either allowing the defendant to plead anew or grant specific performance so that the sentence comports with the reasonable understanding and expectations of the defendant as to sentence for which he bargained. *Id.* The same approach will be used in this case.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Raleigh County entered on February 23, 2011, is reversed, and this case is remanded to the circuit court with instructions that Mr. Griffy be given an opportunity to either plead anew or to grant specific performance so that the sentence comports with the reasonable understanding and expectations of Mr. Griffy as to the sentence for which he bargained.

Reversed and Remanded with Instructions.

---

7. The State has also urged this Court to apply the invited error doctrine. The State asserts that the confusion at the plea and sentencing hearings with regard to whether the plea agreement fell under Rule 11(e)(1)(B) or 11(e)(1)(C) was attributable to Mr. Griffy's counsel and not the result of any error by the circuit court. The State maintains that the confusion over how to classify the plea bargain is the reason the circuit court failed to give the Rule 11(e)(2) warning. " 'Invited error' is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error." *State v. Crabtree,* 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996). Generally, "[h]aving induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences." *Id.* Having carefully reviewed the record, particularly the transcripts of the hearings below, this Court finds no basis to apply the invited error doctrine. While the record does show that there was confusion with regard to the nature of the plea agreement, there is no evidence that such confusion was created by counsel for the purpose of Mr. Griffy later seeking to withdraw his plea.