IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0103

_____

FILED
November 4, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA COUNTIES GROUP
SELF-INSURANCE RISK POOL, INC.,
Petitioner

v.

GREAT CACAPON VOLUNTEER FIRE DEPARTMENT, INC.,
Respondent

_____

Appeal from the Circuit Court of Morgan County
The Honorable Steven Redding, Judge
Case No. CC-33-2018-C-24

AFFIRMED

_____

Submitted: September 23, 2020
Filed: November 4, 2020

Charles R. Bailey, Esq.                 Timothy R. Linkous, Esq.
Adam K. Strider, Esq.                   Margaret L. Miner, Esq.
BAILEY & WYANT, PLLC                    Linkous Law, PLLC
Charleston, West Virginia               Morgantown, West Virginia


James W. Marshall, III, Esq.            Counsel for Respondent
BAILEY & WYANT, PLLC
Martinsburg, West Virginia


Counsel for Petitioner


JUSTICE WALKER delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

WALKER, Justice:

A fire in 2016 destroyed the building where Respondent Great Cacapon Volunteer Fire Department, Inc., (VFD) was housed. The owner of the building, the Morgan County Commission (Commission), was reimbursed for the loss by Petitioner West Virginia Counties Group Self-Insurance Risk Pool, Inc. (WVCoRP). Seeking to recover the funds it expended, WVCoRP sued the VFD and other parties whose negligence it claims caused the fire, and in the process invoked a contractual right to subrogation. The Circuit Court of Morgan County determined that WVCoRP's suit against VFD was barred by West Virginia Code § 29-12A-13(c)(1986), which prohibits claims against political subdivisions made under a right of subrogation. On appeal, WVCoRP contends that § 29-12A-13(c) does not apply because (a) its claims against the VFD are something other than the subrogation prohibited under that code provision; and (b) WVCoRP is exempt by legislative rule from insurance laws of this State. We disagree. First, WVCoRP's claims clearly spring from its coverage contract with the Commission and fall within any plain meaning of subrogation. Second, we find that West Virginia Code § 29-12A-13(c) is not an insurance law of this state from which WVCoRP is exempt. So, we affirm the circuit court's dismissal of WVCoRP's claims against VFD.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 5, 2016, a fire destroyed the building housing the VFD. The owner of the building, the Commission, had previously entered into an insurance contract with

1

WVCoRP, which covered the loss. The Commission was reimbursed $613,179.27 for the fire damage by WVCoRP. "[A]s the subrogee of" the Commission, WVCoRP sued the VFD, Emergency Vehicle Specialist, Inc. and two other entities to recover the funds expended for covering the loss.[1] In its original complaint,[2] WVCoRP stated that it had made payments under the insurance policy to reimburse the Commission for its loss, and that pursuant to other terms of the policy, WVCoRP had the right to subrogation for those payments.

WVCoRP then filed an amended complaint, adding the Commission as a Plaintiff and removing the subrogee designation. The amended complaint contains the same general factual allegations as to VFD and Emergency Vehicle Specialists, Inc.,[3] with the exception that the previously styled "insurance policy" is dubbed a "coverage contract." But, WVCoRP still alleged that "[p]ursuant to WVCoRP's Coverage Contract with the

---

[1] In its complaint, WVCoRP alleged that the fire originated in the electrical components of a brush truck, and the external electric attachments to those components. WVCoRP alleged that the vehicle had a history of electrical malfunctions and had become a fire hazard when it had been recently converted from a 24 volt battery usage to a 12 volt battery usage by Emergency Vehicle Specialist, Inc. WVCoRP alleged that Emergency Vehicle Specialist, Inc.'s personnel were negligent in performing the battery usage conversion, and that VFD was negligent in leaving a vehicle with a history of malfunction unattended while charging. Napa, Inc. and Schumacher Electric Corporation were also made defendants for selling and manufacturing the battery charger, respectively.

[2] The original complaint was filed, but not served.

[3] Petitioner does not pursue the claims against Napa, Inc. and Schumacher Electric Corporation in the amended complaint.

Commission, WVCoRP has the right to subrogation for payments made by WVCoRP to the Commission."

VFD filed a motion to dismiss the amended complaint pursuant to West Virginia Code § 29-12A-13(c), which is a provision of the Governmental Tort Claims Act (GTCA),[4] that immunizes political subdivisions from subrogation claims.[5] WVCoRP argued that it was not pursuing a subrogation claim, and that even if it were, WVCoRP, as a self-insurance risk pool, is exempt from "insurance laws of this State" and therefore not subject to the prohibition in West Virginia Code § 29-12A-13(c). The circuit court granted VFD's motion to dismiss, and this appeal followed.

---

[4] W. Va. Code §§ 29-12A-1 to -18.

[5] The GTCA defines "political subdivision" as

any county commission, municipality and county board of education; any separate corporation or instrumentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns; a combined city- county health department created pursuant to article two, chapter sixteen of this code; public service districts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function: Provided, That hospitals of a political subdivision and their employees are expressly excluded from the provisions of this article.

W. Va. Code § 29-12A-3(c). The parties do not dispute that VFD satisfies that definition.

## II.    STANDARD OF REVIEW

Our review of WVCoRP's appeal is plenary: "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."[6]  As far as our review requires us to examine the GTCA, we have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."[7]

## III.    DISCUSSION

In this appeal, we focus on WVCoRP's claim that VFD's negligence caused the loss of the building owned by the Commission.[8]  The circuit court determined that WVCoRP was proceeding under a right of subrogation, and subrogation claims are barred by West Virginia Code § 29-12A-13(c).  On appeal, WVCoRP argues that it is not proceeding under a right of subrogation and that even if it were, that code provision is an insurance law of this State from which it is exempt under West Virginia Code of State Rules § 114-65-3.3.

---

[6] Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

[7] Syl Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

[8] WVCoRP's claim against Emergency Vehicle Specialist, Inc. is not at issue in this appeal.

In addressing WVCoRP's first contention that it is not proceeding under a right of subrogation, we begin with a review of West Virginia Code § 29-12A-13(c). That provision of the GTCA states "[a]ll actions filed against a political subdivision shall be filed in the name of the real party or parties in interest and *in no event may any claim be presented or recovery be had under the right of subrogation*."[9] It is undisputed that VFD is a political subdivision as defined by the GTCA, and it is undisputed that subrogation claims are barred against political subdivisions. So, the controversy centers on whether WVCoRP is proceeding under a right of subrogation as that term is used in the statute.

WVCoRP first argues that its claim does not fit into the definition of a subrogation claim as contemplated by West Virginia Code § 29-12A-13(c) because WVCoRP is a risk pool and does not operate like an insurance company. So, a claim by the administrator of a self-insurance risk pool does not meet the definition of a "subrogation claim." It contended below that the "right of subrogation" contained in the WVCoRP Coverage Contract with the Commission is a "colloquial and technically inaccurate use of the phrase," and contends before this Court that it is "either shorthand for a process without commonly-utilized legal terminology, or is simply inartfully applied . . . ." In other words, although the Coverage Contract provides for subrogation, WVCoRP argues that the claim is not, in fact, one for "true" subrogation as contemplated by § 29-12A-13(c).

---

[9] Emphasis added.

5

WVCoRP offers two plausible definitions of "subrogation" under this code provision: (1) "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy[;]" or (2) "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor."[10] These definitions, according to WVCoRP, are "true" subrogation. It argues that the first definition is inapplicable because a risk pool is not an insurance company, and the Coverage Contract is not an insurance policy.[11] WVCoRP also finds the second definition inapplicable: it contends that it is not making a claim for subrogation because a payment from a self-insurance fund to cover the loss of one of the fund's members is not a payment of the debt of another.

Here, the Legislature has not altered or qualified the term "subrogation." We have discussed that "[a]bsent a clearly expressed legislative intent requiring otherwise, 'subrogated' is to be given its usual, ordinary meaning."[12] And, "[i]n its normal sense, subrogation gives the payor a right to collect what it has paid from the party who caused

---

[10] BLACK'S LAW DICTIONARY (9th ed. 2009).

[11] *See* W. Va. C.S.R. § 114-65-3.3 ("A pool is not an insurance company, its operation does not constitute the transaction of insurance, and it is not subject to the insurance laws of this State unless otherwise specifically stated herein.")

[12] *Kittle v. Icard*, 185 W. Va. 126, 130, 405 S.E.2d 456, 460 (1991) (citing *White v. Sutherland*, 585 P.2d 331, 334 (N.M. 1978)), *superseded by statute on other grounds as stated in In re E.B.*, 229 W. Va. 435, 729 S.E.2d 270 (2012).

the damage."[13]   Further, in examining this very statute, we have explained that "[t]he general term 'subrogation' used in W. Va. Code § 29-12A-13(c) [1986] implicates diverse circumstances *whereby one party may acquire or exercise rights derived from another party's rights* – such as sureties, codebtors, purchasers, persons paying debts of strangers, creditors, and officers."[14]   That list, of course, is not exhaustive.

Importantly, the plain language of West Virginia Code § 29-12A-13(c) applies to *all* subrogation claims, not just those arising in the insurance context. The statute likewise does not except risk pools, generally, or risk pools comprised of member political subdivisions, specifically.   WVCoRP cannot avoid the characterization of its claim as subrogation by avoiding the term "insurance" because subrogation, generally, is not an exclusively insurance concept, and "subrogation" has not been modified under West Virginia Code § 29-12A-13(c) to limit its applicability to the insurance context.   For that reason, WVCoRP's argument that its claim does not fit one for subrogation on the grounds that it is not an insurance company and its operation does not constitute the conduct of insurance is ill-taken.

WVCoRP argues it is plain that subrogation is not afoot if one only considers whose money paid the claim.   WVCoRP does not expend its own funds to cover member

---

[13] *Id.*

[14] *Foster v. City of Keyser*, 202 W. Va. 1, 501 S.E.2d 165 (1997) (citing 18 *Michie's Jurisprudence*, "Subrogation" Sections II. 6-36) (emphasis added).

7

losses; rather, the funds expended from the pool are made up entirely of member contributions. So, because WVCoRP *itself* does not pay the debt of another but only administers the payment of pool funds, it concludes that the claim to recover those funds is not "true" subrogation. We note again, however, that West Virginia Code § 29-12A-13(c) bars *all* subrogation claims and the Legislature has not placed any qualifier on that term. And, while WVCoRP has argued at length that its claim is not subrogation, it has not provided us a legally cognizable alternative theory of recovery. That is, if WVCoRP's claim is not subrogation, what is it?

In this respect, WVCoRP cannot see the forest for the trees, as made clear by the general definition of subrogation incorporated by Black's Law Dictionary:

> [s]ubrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant. Factually, the case arises because, for some justifiable reason, the subrogation plaintiff has paid a debt owed by the defendant.[15]

To put that definition into factual perspective, the basis of WVCoRP's claim is that risk pool funds were expended to pay for the loss of the building that should have been paid by VFD on account of VFD's negligence. VFD owed WVCoRP no duty of care; so WVCoRP could not state a claim for negligence against VFD in its own name. But, because WVCoRP's Coverage Contract with the Commission provides WVCoRP with a right of

---

[15] BLACK'S LAW DICTIONARY (11th ed. 2019), subrogation (quoting 1 Dan B. Dobbs, Law of Remedies § 4.3(4), at 604 (2d ed. 1993))

subrogation, WVCoRP had a cause of action against VFD to recover the risk pool funds paid out to the Commission because *the Commission* had a cause of action against VFD.

WVCoRP filed its complaint against VFD *invoking* that right of subrogation to step into the shoes of the Commission and assume the Commission's claims and remedies against VFD. In its own words, WVCoRP "is contractually empowered to file suit on its members' behalf to recover self-insured funds from responsible parties." WVCoRP's action is pursued under a contractual right of subrogation, and WVCoRP has no cause of action against VFD to recover the funds WVCoRP "administered" to pay the Commission's loss *but for* that contractual right of subrogation. No matter the makeup of the risk pool funds and WVCoRP's role in administering the payment, WVCoRP is stepping into the shoes of the Commission to recover funds expended on the Commission's behalf that it claims should have been paid by VFD, and so is proceeding under a right of subrogation.

Whatever monikers it employs to disguise its claim as anything other than subrogation to avoid application of West Virginia Code § 29-12A-13(c), WVCoRP's cause of action is derived from the right of subrogation and can only plausibly be pursued on that theory. So, we conclude WVCoRP's action to reimburse the risk pool for funds expended to cover the loss is one such "diverse circumstance" of subrogation contemplated and barred by West Virginia Code § 29-12A-13(c).

9

WVCoRP argues, alternatively, that even if its claim is one made under a right of subrogation, it is not subject to West Virginia Code § 29-12A-13(c)'s prohibition on subrogation against political subdivisions under West Virginia Code of State Rules § 114-65-3.3. That rule provides, "[a] pool is not an insurance company, its operation does not constitute the transaction of insurance, and it is not subject to the insurance laws of this State unless otherwise specifically stated herein." The operative inquiry, then, is whether West Virginia Code § 29-12A-13(c) is an insurance law of this State.

The GTCA acts to "limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability."[16] So, because the language of the GTCA's purpose incorporates regulating the costs and coverage of insurance, and because the Act places limitations on the terms of insurance contracts with political subdivisions, WVCoRP argues that West Virginia Code § 29-12A-13 is clearly an insurance law of this State. We disagree.

The stated purpose of the GTCA, first and foremost, is to limit liability for political subdivisions so they can procure affordable coverage. The minimal interface the GTCA has with the insurance industry is aimed at ensuring political subdivisions are able to procure affordable coverage by both limiting liability and increasing oversight of

---

[16] W. Va. Code § 29-12A-1.

10

insurance contracts. The GTCA does not mandate the means by which a political subdivision is insured, nor does it dictate claims adjustment or resolution. Significantly, the scope of Code of State Rules §§ 114-65-1 to -12 is to "set[] forth the procedural requirements for the creation and regulatory oversight of self-insurance pools created to insure workers' compensation and civil liability risks of political subdivisions."[17] It is apparent that § 114-65-3.3 is aimed at ensuring that risk pools, as defined under the Rules, are subject to regulation under those Rules as opposed to the regulations governing the insurance industry generally. West Virginia Code § 29-12A-13(c) does not implicate any regulatory oversight of the insurance industry; it pertains *solely* to a limitation on liability. We decline to adopt so broad an interpretation of an "insurance law of this State" such that this code provision limiting liability—and only limiting liability—falls under the purview of § 114-65-3.3. Exempting risk pools from the GTCA prohibition on subrogation claims would be inherently inconsistent with its purpose, not to mention its clear terms.

WVCoRP argues that public policy weighs in favor of interpreting the GTCA as an insurance law of the state to permit its pool to subrogate under West Virginia Code § 29-12A-13(c) because it is comprised of political subdivisions. We acknowledge that in this case, both parties are intended to benefit from application of the GTCA so as to limit

---

[17] W. Va. C.S.R. § 114-65-1.1.

11

the financial exposure of political subdivisions.[18] But, WVCoRP's proposed solution ignores that political subdivisions that are *not* members of a pool would still be prohibited under that code provision from proceeding against another political subdivision under a right of subrogation. There is no sound reasoning to read into the GTCA an exception to the bar on subrogation claims for a political subdivision that is a member of a risk pool, and alternately apply the plain language of the statute to a political subdivision that is privately or self-insured. WVCoRP's argument is untenable given the Legislature's plain language that *all* claims against political subdivisions made under a right of subrogation are barred.

## IV.    CONCLUSION

For the reasons set forth above, we affirm the January 3, 2019 order of the Circuit Court of Morgan County.

Affirmed.

---

[18] *See Foster*, 202 W. Va. at 22 n.18, 501 S.E.2d at 186 n.18 ("We do state that the clear and sole purpose of [West Virginia Code § 29-12A-13(c)] is to provide financial benefit to political subdivisions.").