**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**May 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Crystal G. Brown and Tri-State
Ambulance, Inc.,
Plaintiffs Below, Petitioners**

**vs.)  No. 20-0156** (Marshall County 18-C-263)

**Ohio Valley Health Services & Education
Corporation; Ohio Valley Medical Center;
Alecto Healthcare Services Ohio Valley, LLC;
and John Does 1-5, individuals, Businesses or
Entities,
Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners Crystal G. Brown and Tri-State Ambulance, Inc., by counsel Mark A. Kepple and Benjamin P. Visnic, appeal the Circuit Court of Marshall County's January 27, 2020, order dismissing their complaint for their failure to comply with the Medical Professional Liability Act's pre-suit notice requirements.[1] Respondents Ohio Valley Health Services & Education Corporation; Ohio Valley Medical Center; Alecto Healthcare Services Ohio Valley, LLC; and John Does 1-5, individuals, Businesses or Entities, by counsel J. Tyler Dinsmore, David S. Givens, and Jason J. Wade, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 16, 2016, Petitioner Crystal G. Brown, an emergency medical technician employed by Petitioner Tri-State Ambulance, Inc. ("Tri-State Ambulance"), was required to transport a patient from Respondent Ohio Valley Medical Center ("OVMC") to a hospital in Columbus, Ohio.[2] On the way to Ohio, due to adverse weather conditions, Petitioner Brown

---

[1] *See* W. Va. Code § 55-7B-6.

[2] Tri-State Ambulance had a contract with OVMC to provide ambulance services.

wrecked. Two passengers in Petitioner Brown's ambulance—the patient and another employee of Tri-State Ambulance—were killed in the accident.

Petitioners filed suit against respondents on December 17, 2018, asserting causes of action for "negligence, carelessness, and/or recklessness" and equitable subrogation. In support of their negligence claim, petitioners alleged that OVMC knew but failed to disclose that transporting the patient was not medically necessary to save his life and that dangerous weather conditions were approaching. This failure to disclose deprived Petitioner Brown of the information necessary to determine whether the trip should have been made that night. Petitioner Brown alleged that, as a result, she suffered bodily injury and physical and mental pain, and she alleged that she will continue to endure physical and mental pain and suffering and emotional distress. She also claimed lost wages and loss of earning capacity.

In support of the equitable subrogation claim, Tri-State Ambulance alleged that it incurred losses by paying its deductible to its insurer and attorney's fees and costs in connection with litigation initiated by other passengers in the ambulance. Because Tri-State Ambulance's insurer settled the lawsuits, Tri-State Ambulance claimed its insurer is a partially subrogated insurer entitled to reimbursement by respondents. Tri-State Ambulance asserted that the insurance company "is subrogated to the rights of Tri-State Ambulance [] as against [respondents] to the extent of these costs."

Respondents filed an answer and served discovery. Then, on June 27, 2019, they moved to dismiss petitioners' complaint.[3] Respondents argued that dismissal was proper because petitioners' claims were governed by the Medical Professional Liability Act ("MPLA" or the "Act") and petitioners failed to comply with the Act's pre-suit notice requirements. Further, with regard to petitioners' equitable subrogation claim, respondents argued that petitioners failed to join them in the prior lawsuits, so petitioners had "no right to subrogation or contribution."

Petitioners argued in response that their claims were not covered by the MPLA; rather, liability was alleged to "stem[] from the working conditions [respondents] created by utilizing emergency services in severe weather when no emergency actually existed." Additionally, petitioners argued that respondents mischaracterized their equitable subrogation claim as one for contribution, and that their claim should not be dismissed because "[i]t would be unjust for [petitioners] to have suffered financially and emotionally to defend themselves when the true tortfeasors are the [respondents] in the present action."

Following a hearing held on December 18, 2019, the circuit court granted respondents' motion to dismiss. The court found that "the crux of circumstances which set the events into motion and [about] which [petitioners] complain was a decision made by one or more of the [respondent] health care providers which the [c]ourt finds was a healthcare decision and within the definition of 'health care'" provided in the MPLA. Thus, the court continued, petitioners were required to have complied with the MPLA's pre-suit notice requirements, and their failure to do so deprived

---

[3] Alternatively, respondents moved for consolidation of petitioners' complaint with another civil action pending in Marshall County involving the patient's estate.

the court of subject matter jurisdiction. Accordingly, the court dismissed petitioners' complaint without prejudice by order entered on January 27, 2020. This appeal followed.

We review de novo a circuit court's order granting a motion to dismiss a complaint. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). Likewise, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

Petitioners argue on appeal that the circuit court erred in finding that their claims fell within the purview of the MPLA. They state that their negligence claim is a non-medical negligence claim, not one involving medical professional liability, and they highlight that Petitioner Brown is not a patient under the MPLA and that respondents' failure to inform her of hazardous working conditions is not medical treatment or a medical decision. They claim that applying the MPLA's pre-suit notice requirements to this non-patient situation would result in an absurdity because the required screening certificate of merit must be executed by a health care provider who, among other things, treats "injuries or conditions similar to those of the patient." *See* W. Va. Code §§ 55-7B-6(b)(2), -7(a)(6). With regard to their equitable subrogation claim, petitioners state that it has nothing to do with the MPLA or health care. They note that they are not seeking subrogation on claims paid on behalf of the patient; therefore, the MPLA is not implicated.[4]

The Act provides that "no person may file a medical professional liability action against any health care provider without complying with" certain pre-suit notice requirements. W. Va. Code § 55-7B-6(a). Petitioners do not dispute that respondents are "health care providers" under the Act. *See id.* § 55-7B-2(g). Rather, the issue is whether petitioners have filed a "medical professional liability action." Under the Act, "medical professional liability" is defined broadly to mean

> any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

*Id.* § 55-7B-2(i). "Health care," in turn, is defined in relevant part as

> [a]ny act, service or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or

---

[4] Petitioners also devote several pages of their brief to arguing that their equitable subrogation claim is not a contribution claim. The circuit court made no such findings, and respondents do not argue this issue in their response. For purposes of this appeal, we accept that petitioners pled an equitable subrogation claim. Accordingly, we need not recount their arguments on this issue here.

3

acting under the direction of a health care provider or licensed professional for, to or on behalf of a patient during the patient's medical care, treatment or confinement, *including*, but not limited to, staffing, *medical transport*, custodial care or basic care, infection control, positioning, hydration, nutrition and similar patient services.

*Id.* § 55-7B-2(e)(2) (emphasis added).

Applying these definitions to petitioners' complaint, it is clear that they have stated claims that fall within the purview of the MPLA. Petitioners' negligence claim is predicated on respondents' decision to transport the patient to another healthcare facility. As set forth above, the Act specifically includes "medical transport" within the definition of "health care." *See id.* And, as the Act includes within the definition of "medical professional liability" those claims that "may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services," petitioners' equitable subrogation claim, arising from these same circumstances, also falls within its ambit. *Id.* § 55-7B-2(i).

That Petitioner Brown was not the patient does not preclude application of the MPLA. In syllabus point 5 of *Osbourne v. United States*, 211 W. Va. 667, 567 S.E.2d 677 (2002), we held that the Act "permits a third party to bring a cause of action against a health care provider for foreseeable injuries that were proximately caused by the health care provider's negligent treatment of a tortfeasor patient." In reaching this holding, we observed that, in defining "medical professional liability,"

the Legislature employed both the word "person" and the term "patient": "any liability for damages resulting from the death or injury of a *person* for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a *patient*.

*Id.* at 672-73, 567 S.E.2d at 682-83 (quoting W. Va. Code § 55-7B-2(d) (1986)). This distinction made it "apparent that the Legislature intended to allow individuals generally to recover damages for injuries attributable to medical professional liability regardless of whether they are actually 'patients.'" *Id.* at 674, 567 S.E.2d at 684. Thus, the MPLA applies to petitioners' claims, though petitioners are not patients, because they have stated claims for medical professional liability.

Finally, we made clear in syllabus point 2 of *State ex rel. PrimeCare Medical of West Virginia, Inc. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019), that a circuit court is deprived of subject matter jurisdiction over medical professional liability actions where a person filing such action fails to comply with the Act's pre-suit notice requirements set forth in West Virginia Code § 55-7B-6. Because petitioners failed to comply with those pre-suit notice requirements, the circuit court did not err in dismissing their complaint for want of subject matter jurisdiction.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 20, 2021

4

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead

**DISSENTING:**

Justice John A. Hutchison
Justice William R. Wooton

Hutchison, J., dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted—not a memorandum decision. Accordingly, I respectfully dissent.

Wooton, J., dissenting:

The majority's decision in this case goes far beyond anything in this Court's precedents. Petitioners in this case were not patients, and their injuries and damages were not "caused by the health care provider's negligent treatment of a tortfeasor patient[,]" as in *Osborne*. If this Court is going to extend blanket immunity to health care practitioners for harm caused in any way to anyone—and make no mistake, this is the practical effect of today's decision—we should do it in a signed opinion setting forth a rationale which supports such a radical extension of the Medical Professional Liability Act.