IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**March 28, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1299

WHEELING HOSPITAL, INC.,
Defendant Below, Petitioner

v.

CHARLES O. LORENSEN, WEST VIRGINIA TAX COMMISSIONER,
Plaintiff Below, Respondent

Appeal from the Circuit Court of Ohio County
Honorable Martin J. Gaughan, Judge
Civil Action No. 10-CAP-15

AFFIRMED

Submitted: January 23, 2013
Filed: March 28, 2013

Niall A. Paul, Esq.
Timothy D. Houston, Esq.
Spilman, Thomas & Battle, PLLC
Charleston, West Virginia
Attorneys for Petitioner

Patrick Morrisey, Esq.
Attorney General
Katherine A. Schultz, Esq.
Charli Fulton, Esq.
Assistant Attorneys General
Charleston, West Virginia
Attorneys for Respondent

Kimberly Stitzinger Jones
Assistant Attorney General
Charleston, West Virginia
Amicus Curiae-WV Bureau for
Medical Services

Marianne Kapinos
General Counsel
Charleston, West Virginia
Amicus Curiae- WV Health Care
Authority

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS

A hospital's provision of health care services, such as its physical facility; staff; medical equipment; drugs; and other incidental supplies typically regarded as overhead, to physicians not employed by the hospital does not come within the purview of "physicians' services" as that term is defined for purposes of the West Virginia Health Care Provider Tax Act, West Virginia Code §§ 11-27-1 to -37 (2005).

LOUGHRY, Justice:

Wheeling Hospital (the "Hospital") appeals from the August 15, 2011, ruling of the Circuit Court of Ohio County affirming the decision of the West Virginia Office of Tax Appeals ("Office of Tax Appeals") which denied the Hospital's request for a full tax refund.[1] The Hospital contends that services which it initially classified as either "inpatient" or "outpatient" when filing its tax returns[2] should have been treated as "physicians' services" for purposes of the West Virginia Health Care Provider Tax Act (sometimes referred to as the "Act").[3] In seeking to reclassify items of overhead[4] as "physicians' services," the Hospital focused on its use of certain billing codes that are required by federal law. The Respondent West Virginia Tax Commissioner[5] (the "Commissioner") argues that the Hospital's reliance on these billing codes to identify what qualifies as "physicians' services" under the Act is misplaced. We agree. Upon our careful review of the record in this matter

---

[1]The Hospital received a partial tax refund in the amount of $440,540 from the Tax Department and then another $14,502 as a result of its appeal to the Office of Tax Appeals.

[2]The tax years in issue are 2003 to 2006.

[3]*See* W.Va. Code §§ 11-27-1 to -37 (2005).

[4]By overhead, the Hospital refers to charges associated with the use of its facility; staff; drugs; medical equipment; and similar items.

[5]When this case was filed, Craig A. Griffith was the Tax Commissioner. Charles O. Lorenson, the acting Tax Commissioner, was automatically substituted as a party pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

1

in conjunction with the applicable statutes and regulations, we do not find that the circuit court committed error in upholding the denial of the Hospital's refund request. Accordingly, we affirm.

## I. Factual and Procedural Background

Pursuant to its reporting and payment obligations under the Act, the Hospital filed returns for the years in issue: 2003 to 2006. Based on the advice of a consultant, the Hospital filed an amended return for fiscal year 2003 on October 27, 2006, seeking a refund of $484,188. Shortly thereafter, the Hospital filed amended returns for fiscal years 2004 and 2005, seeking respective refunds of $687,101 and $800,986.[6] In the last of the amended returns at issue, the Hospital sought a refund of $779,945 for fiscal year 2006.[7] As provided in the Joint Stipulation of Facts,[8] the refunds under discussion are related to the Hospital's attempt to reclassify certain services from either "inpatient" or "outpatient" hospital services to "physicians' services" for purposes of the Act.[9] *See* W.Va. Code §§ 11-27-9, -15, -16 (2005).

---

[6]The returns were filed on December 14, 2006.

[7]This return was filed on January 16, 2007.

[8]While this matter was before the Office of Tax Appeals, the parties stipulated to 299 statements of fact and submitted 50 joint exhibits.

[9]"Physicians' services," which are no longer taxed under the Act, were taxed at a lower rate than "inpatient" or "outpatient" services before being phased out on July 1, 2010. *See* W.Va. Code § 11-27-36 (2005).

Upon its receipt of the amended returns, the Tax Department performed a field audit on those returns. As a result of the audit, the Hospital partially reduced the amount of the refunds it was seeking.[10] On December 24, 2007, the Tax Department granted a portion of the refund requests, awarding the Hospital refunds for the years 2003-2006 in the respective amounts of $66,882, $152,088, $150,811 and $70,759.[11] On March 4, 2008, the Hospital filed a petition for refund with the Office of Tax Appeals, seeking the remainder of the refunds it claimed for the subject years.

Following a hearing,[12] the Office of Tax Appeals granted a limited portion of the Hospital's request for the additional refunds through its decision issued on April 22, 2010, and denied the remainder of the request.[13] As grounds for the denial, the Office of Tax Appeals decided that the statutory classifications and definitions prescribed by the Act, rather than billing codes used by the Hospital, are controlling for purposes of determining the proper classification for reporting its gross receipts. As the administrative law judge

---

[10]The Hospital reduced its refund request for 2003 to $427,163; for 2004 to $651,261; and for 2005 to $768,108.

[11]The total amount of the awarded refunds was $440,540.

[12]The hearing before the Office of Tax Appeals was held on June 11, 2008.

[13]A refund of $14,502 was authorized based on the Commissioner's concession that such amount pertained to lithotripsy services provided by an independent entity.

3

recognized, the fact that the Act looks to Section 1903(w) of the Social Security Act[14] to define the three subject terms ("inpatient hospital services," "outpatient hospital services," and "physicians' services") is problematic because Section 1903(w) does not in turn define those terms.[15] As a result, the administrative judge concluded that the three subject terms "must be treated as if they are undefined."[16] Because these same terms are defined for Medicaid purposes, the administrative law judge agreed with the parties that the regulatory definitions should be consulted.[17] Finding the federal regulatory definitions "instructive," the administrative law judge reasoned that the definitions were consonant with the common, ordinary and accepted meaning of those terms:

---

[14]*See* 42 U.S.C. § 1396b (2006).

[15]While Section 1903(w) does not define the subject terms, the definitional section for subchapter XIX, which contains Section 1903(w), does provide a definition for "physicians' services." *See* 42 U.S.C. § 1396d(a)(5)(A). We note additionally that the West Virginia Health Care Provider Tax Act does not limit its reference solely to Section 1903(w) as the cross reference is phrased in terms of "borrowing" the federal definition that applies "for the purposes of Section 1903(w)." W.Va. Code § 11-27-16(c)(3).

[16]In 2009, the Legislature amended West Virginia Code § 11-27-16 to include a definition of "physicians' services" which tracks the language of 42 U.S.C. § 1396d(a)(5)(A) in terms of providing that such services are "limited to those services furnished by a physician . . . whether furnished in the physician's office, . . . a hospital, . . . or any other location." W.Va. Code § 11-27-16 (2009). Because the tax years at issue predate the effective date of the amendment, July 10, 2009, this language was not relied upon below.

[17]In recognizing the applicability of the regulatory definitions, the parties considered that the health care provider tax was established as a means of accumulating funds necessary to draw federal matching funds for Medicaid purposes and the additional fact that the Act looks directly to the federal legislation to define its terms. *See, e.g.,* W.Va. Code §§ 11-27-9(c)(3), -15(c)(3), -16(c)(3).

4

> "Physicians' services" expressly refers to the services provided by physicians, or by or under their direct personal supervision. On the other hand, "hospital services" brings to mind the broad range of services provided by hospitals to their patients, with the distinction between the two different classifications of hospital services depending upon the status of the patient as either an inpatient or outpatient.

In conclusion, the administrative law judge determined that the overhead items at issue fell into the "common, ordinary and accepted meaning of 'hospital services,' not 'physicians' services.'" As to two advisory Tax Department opinions[18] that the Hospital sought to rely on, the administrative law judge rejected them as non-binding on the Commissioner.

The Hospital appealed the ruling of the Office of Tax Appeals[19] to the circuit court. After hearing argument from the parties, the circuit court issued its decision on August 15, 2011. Deciding to affirm the decision of the Office of Tax Appeals on partially alternate grounds, the circuit court began its analysis with the observation that Congress intended states to treat "physicians' services," "inpatient services," and "outpatient services" as distinct categories of medical assistance.[20] Recognizing that the Act defines "physicians' services" as "those services that are physicians' services for purposes of Section 1903(w) of the Social Security Act, the circuit court then considered that Section 1903(w) is part of

---

[18]The first one was issued on January 5, 2000, and the second, on November 17, 2006.

[19]The appeal was filed on June 25, 2010.

[20]*See Virginia Dep't of Med. Assistance Servs. v. Johnson*, 609 F.Supp.2d 1, 5 (D. D.C. 2009).

subchapter XIX of the Social Security Act. *See* W.Va. Code § 11-27-16(c)(3) (2005). Under

42 U.S.C. § 1396d, which provides definitions for all of subchapter XIX, physicians' services

are depicted as "services furnished by a physician." 42 U.S.C. § 1396d(a)(5)(A) (2006).

Looking to federal regulations enacted to implement Medicaid legislation, the circuit court

recognized that "physicians' services" are also defined as acts "rendered by a physician

within the scope of practice of medicine or osteopathy as defined by State law or by someone

under that physician's personal supervision." *See* 42 C.F.R. § 440.50(a)(1), (2) (2012).


Acknowledging that "what the doctor does and what the hospital does (and

provides to the doctor) must be considered, construed, and treated as two different things,"

the circuit court reasoned that the Hospital's provision of its staff, facility, supplies, and

equipment to a physician performing medical services at its facility does not constitute

"physicians' services." Moreover, as the circuit court concluded, "none of the services at

issue were furnished by a physician or under his supervision as required under federal law

to qualify as a physician [sic] service." As to the Hospital's reliance on federally-approved

billing codes to identify what constitutes "physicians' services," the circuit court found that

the CPT codes–an acronym for current procedural terminology–serve multiple purposes.[21]

While they are used for physician reimbursement purposes, they also reflect the hospital

---

[21]As stipulated by the parties, the CPT codes are established by the American Medical Association, a national association of physicians.

6

resources necessary to perform a particular medical procedure. Consequently, the trial court reasoned that "CPT codes are not exclusive identifiers of physician services."

The circuit court found the Hospital's contention that the provider tax at issue was being imposed in a non-uniform manner[22] to be without foundation when it realized that this argument was directly linked to the Hospital's position that its overhead costs should be classified as "physicians' services."[23] Based on its conclusion that the overhead items at issue are not "physicians' services" under the Act, the circuit court determined that the Act is uniformly imposed in terms of the assessments within the various categories of services. All "inpatient services" are taxed at the same rate; all "outpatient services" are taxed at the same rate; and all "physicians' services" are taxed at the same rate. The circuit court reasoned that the federal government, through its release of matching funds for twenty years, has indicated its approval of the manner in which the subject tax is imposed on the health

---

[22]Under the Medicaid Voluntary Contribution and Provider-Specific Tax Amendments of 1991, a state tax dedicated to funding a state Medicaid program has to be (1) broad based; (2) uniformly imposed; and (3) must not hold taxpayers harmless for the costs of the tax. *See* 42 U.S.C. § 1396b(w)(3)(B), (w)(3)(D), (w)(4) (2006). A state's failure to comply with any of these three elements will result in a reduction of federal matching funds.

[23]The lack of uniformity arises, according to the Hospital, when physicians who own their own offices report the overhead component of their fee as "physicians' services," while the Hospital is required to report its overhead component for medical services provided by physicians at its facility within the classification of either "inpatient" or "outpatient" services.

care providers in this state. Concerning the opinion letters issued by the Tax Department,[24] the trial court concurred with the opinion of the Office of Tax Appeals that these letters were non-binding.[25] With its filing of this appeal, the Hospital seeks to reverse the circuit court's decision to uphold the denial of its refund request.

## II. Standard of Review

At the center of the case before us is the definition of the term "physicians' services" as it relates to the assessment of taxes pursuant to the West Virginia Health Care Provider Tax Act. W.Va. Code §§ 11-27-1 to -37 (2005). Because the issue presented involves the interpretation of a statute, our review is *de novo*. *See* Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995) (holding that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review"); *accord* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). We proceed to determine whether the circuit court correctly determined that the overhead items at issue do not constitute "physicians' services" under the Act. *See Columbia Gas Trans. Corp. v. E.I. du Pont de Nemours and Co.,* 159 W.Va. 1, 13, 217 S.E.2d 919, 926 (1975) (recognizing that "[t]he function of the courts in

---

[24]*See supra* note 18.

[25]Because the Hospital does not challenge the circuit court's ruling as to the non-binding nature of those tax opinions, we find no need to further discuss them for purposes of this opinion.

8

relation to taxes is . . . to review legislation and executive-administrative action and to determine their correctness").

### III. Discussion

The enactment in 1993 of the West Virginia Health Care Provider Tax Act was necessitated by the federal government's imposition of certain criteria that control the manner in which states may raise funds to procure federal matching funds for the provision of medical services covered by Medicaid. *See* W.Va. Code § 11-27-1. While participation in the Medicaid program is voluntary, "the reality is that states, and particularly this state, have no choice but to participate" as the "alternative is to deprive indigent citizens and particularly the children of indigent families of basic medical services." *Id.* § 11-27-1(d). In recognition of this clear need for federal funding to provide medical services to indigent persons, the Legislature declared its intent that the Act be in conformity with the requirements of federal legislation enacted to implement the Medicaid program. *Id.* § 11-27-1(g) (referencing U.S. Public Law 102-234 which amended Section 1903 of the Social Security Act); *see also* 42 U.S.C. § 1396b(w) (2006) (providing for reduction of federal matching funds where state health care provider tax is not imposed uniformly).

In accord with the federally-approved classes of health care services subject to a broad-based provider tax,[26] the Legislature imposed the tax under discussion on various health care services.[27] *See* W.Va. Code §§ 11-27-4 to -19 (2005). Included in the sixteen health care services subject to the provider tax were the three services at issue in this case: "inpatient services;" "outpatient services;" and "physicians' services." *See* W.Va. Code §§ 11-27-9; -15; -16. In exchange for the privilege of engaging in one of the sixteen health care services identified under the Act, a tax was imposed on the gross receipts of providers of the specified services. *See id.* The rate for "inpatient services" and "outpatient services" has remained constant at 2.5% of gross receipts. In contrast, the rate for "physicians' services," while initially set at 2% of gross receipts, was gradually phased out entirely. *See* W.Va. Code § 11-27-36 (2005) (reducing tax rate on certain health care services, including "physicians' services," to 1.8% on July 1, 2001, and providing for annual rate reduction thereafter until July 1, 2010, when tax eliminated entirely on those services). The revenue

---

[26]*See* 42 U.S.C. § 1396b(w)(7)(A)(i)-(ix) (identifying eight classes of health care items or services for purposes of federal financial participation in Medicaid program); 42 C.F.R. § 433.56 (2012) (specifying additional classifications of health care items and services under authority of 42 U.S.C. § 1396b(w)(7)(A)(ix)).

[27]Providers of the following services initially subject to the tax included: ambulatory surgical centers; chiropractic services; dental services; emergency ambulance services; independent laboratory or X-ray services; inpatient hospital services; intermediate care facility services for the mentally retarded; nursing facility services; nursing services; opticians' services; optometric services; outpatient hospital services; physicians' services; podiatry services; psychological services; and therapists' services. As of 2010, "physicians' services" were no longer subject to the health care provider tax. *See* W.Va. Code § 11-27-32.

10

collected from the health care provider tax is deposited into a special revenue fund known as the Medicaid State Share Fund.[28]  *See* W.Va. Code § 11-27-32.

From the implementation of the health care provider tax under discussion in 1993 until 2006, the Hospital paid the privilege tax under discussion by classifying items of overhead (i.e. charges for the use of its facility, staff, drugs, and medical equipment) as falling under either "inpatient services" or "outpatient services."  W.Va. Code §§ 11-27-9, -15. Then, after conferring with a consultant, the Hospital decided to challenge the inclusion of these overhead costs within these two categories, contending that they should have been reported instead as "physicians' services."  W.Va. Code § 11-27-16.  Based on the fact that "physicians' services" were taxed at a lower rate than "inpatient services" and "outpatient services," the Hospital sought to reduce the amount of its prior payments of the health care provider tax.

Given the statutory fulcrum of this matter, we begin our analysis with an examination of the challenged legislation.  The dispute before us centers on the meaning of the term "physicians' services."  Under West Virginia Code § 11-27-16(c)(3) (2005), the Legislature defined "physicians' services" as "those services that are physicians' services for

---

[28]The funds deposited into this special revenue account, supplemented with additional state moneys, are used to obtain federal funds.

purposes of Section 1903(w) of the Social Security Act." The definitions that govern Section 1903(w)[29] are set forth in 42 U.S.C. § 1396d. Under the applicable provision of the Social Security Act, "physicians' services" are defined as "services furnished by a physician, whether furnished in the office, the patient's home, a hospital, or a nursing facility, or elsewhere." *Id.* § 1396d(a)(5)(A) (internal citation omitted).

Federal regulations adopted for the purpose of interpreting and implementing the definitions of services that are covered by Medicaid further define the term "physicians' services." *See* 42 C.F.R. § 440.1 (2012) (stating purpose of regulations as defining "services that are included in 'medical assistance'"). That expanded definition provides as follows:

> (a) "Physicians' services," whether furnished in the office, the beneficiary's home, a hospital, a skilled nursing facility, or elsewhere, *means services furnished by a physician–*
> (1) Within the scope of practice of medicine or osteopathy as defined by State law; and
> (2) By or under the personal supervision of an individual licensed under State law to practice medicine or osteopathy.

42 C.F.R. § 440.50 (emphasis supplied).

In its brief submitted to the circuit court, the Hospital explained why this regulatory definition of "physicians' services" was applicable to this case:

---

[29]*See* 42 U.S.C. § 1396b(w).

Chapter IV of title 42 of the Code of Federal Regulations (CFR) contains the CMS[30] regulations implementing the terms of Title 19 [XIX] of the Social Security Act. Specifically, 42 CFR Part 440 contains general provisions related to the Medicaid program, including definitions of the services at issue in this case. These regulations were promulgated by CMS to implement the Congressionally enacted statutes in Title 19 [XIX]. Therefore, the definitions contained therein apply to the terms contained in 42 USC 1396(w), and by reference to the same terms contained in the Broad Based Tax La[w] at issue in this case. (footnote added)

In the same vein, the Hospital concluded that the federal regulations which define "inpatient hospital services" and "outpatient hospital services" similarly apply to this case.[31] *See* 42 C.F.R. §§ 440.10, 440.20; *see also* W.Va. Code §§ 11-27-9, -15 (relying upon federal definitions of "inpatient services" and "outpatient services" to apply provisions of West Virginia Health Care Provider Tax Act).

---

[30]The Centers for Medicare and Medicaid Services is a federal agency charged with the responsibility of processing Medicare and Medicaid health care claims.

[31]"Inpatient hospital services" are defined as services "furnished under the direction of a physician or dentist" that are "ordinarily furnished in a hospital for the care and treatment of inpatients[.]" 42 C.F.R. § 440.10. "Outpatient hospital services" are described as "preventive, diagnostic, therapeutic, rehabilitative, or palliative services that" are furnished to outpatients by or under the direction of a physician or dentist. 42 C.F.R. § 440.20.

13

Having identified the two definitions of "physicians' services" [32] that are used for purposes of Medicare law,[33] and are thus controlling by virtue of the Act's incorporation of those definitions,[34] we proceed to examine whether the overhead charges at issue fall within those definitions. Each of the federal definitions, the one provided in the Medicaid legislation and the one set forth in the regulations, is framed in terms of services being furnished by a physician. The key construct is whether a physician directly furnished medical services or whether such services were furnished under the personal supervision of that physician. *See* 42 U.S.C. § 1396d(a)(5)(A); 42 C.F.R. § 440.50.

The items which the Hospital seeks to reclassify as "physicians' services" are items routinely characterized as overhead: costs for the use of the Hospital facility; the Hospital staff; incidental drugs and supplies; and medical equipment. There is no dispute that the overhead items at issue were actually furnished–that is, supplied or provided–by the Hospital. Downplaying the significance of its provision of the overhead, however, the Hospital seeks to convince us that receipts realized in connection with its provision of overhead should fall within the scope of "physicians' services." In support of its position,

[32]Because the parties do not dispute the meaning of "inpatient services" or "outpatient services," we find it unnecessary to discuss the nature of those services at length.

[33]*See* 42 U.S.C. § 1396d(a)(5)(A); 42 C.F.R. § 440.50.

[34]*See* W.Va. Code § 11-27-16(c)(3) ("Physicians' services" means those services that are physicians' services for purposes of Section 1903(w) of the Social Security Act.").

14

the Hospital focuses on its use of the same standardized CPT codes as the physicians for billing purposes.

The Hospital contends that because the federal government requires it to use CPT codes to obtain payment for the overhead costs at issue, the "character" of those charges becomes immutably fixed as "physicians' services" upon the employment of corresponding billing codes. In further explanation, both a hospital and a physician may use the same CPT codes for Medicaid billing purposes. The payment for those services, however, varies based on where the services are performed. To illustrate, when a physician performs a medical service in his office, he bills that service using "physicians' services" CPT codes and he receives the entirety of the Medicaid fee for that service.[35] When, however, the medical service is performed in a hospital-owned facility, as in this case, the hospital gets a portion of the physician's fee component that is attributable to overhead costs.[36] This adjustment is necessary due to the use of items that a hospital, rather than a physician, supplied for purposes of performing a particular procedure (i.e. facility, staff, equipment, drugs, etc.). Given its use of the "physicians' services" CPT codes for billing purposes under the last-

---

[35]There are three components to the physician's fee award from Medicaid: work; malpractice; and practice expense. The practice expense component refers to the equipment, supplies, drugs, staffing, and facility required for the doctor to provide a particular service.

[36]*See supra* note 35.

described circumstance,[37] the Hospital argues that the overhead charges at issue necessarily "retain" their billing status as "physicians' services." The flaws in this argument are readily apparent.

First and foremost, there is nothing in the applicable federal definitions of "physicians' services" that links the definition of that term to the manner in which those medical services are billed. Instead, the central focus is on whether the medical services under consideration were *furnished* by a physician. *See* 42 U.S.C. § 1396d(a)(5)(A); 42 C.F.R. § 440.50. Critically, there is nothing in the definition of "physicians' services" that includes, directly or even inferentially, all things necessary to perform a particular medical service. As a result, in deciding whether items of overhead fall under the definitional rubric of "physicians' services," we are required to determine whether those items were actually furnished by a physician. In those instances, as discussed above, where a physician utilized his or her own facility to perform medical services, that physician is accorded every penny of the practice expense component (overhead) of the Medicaid fee.[38] In instances such as the situation before us, however, the Hospital gets paid for those items of overhead it provided to enable a medical service to be performed at its facility. The controlling federal definitions make it clear that the issue before us must be resolved in terms of who furnished the services

---

[37]We are referring to those instances when physicians who are not employed by the Hospital perform medical procedures and services at Hospital-owned facilities.

[38]*See supra* note 35.

16

and not by reference to billing codes.  *See* 42 U.S.C. § 1396d(a)(5)(A); 42 C.F.R. § 440.50. In this case, it was the Hospital and not the physicians who provided the items of overhead that are in dispute.

While we appreciate the financial incentive underlying the Hospital's attempt to recast its overhead receipts as "physicians' services" as well as the related argument that those receipts were realized as a result of physicians performing medical services at the Hospital,[39] the governing definitions do not provide the necessary latitude for such a result. And, contrary to the Hospital's arguments, there is no nexus between the use of the CPT codes and the federal definitions of "physicians' services."  In positing that the federal definitions of "physicians' services" encompass the CPT codes, the Hospital has advanced a self-serving, but fallacious argument.  As discussed above, there is simply no connection between the billing aspects of Medicaid and the governing federal definitions.  In describing the CPT codes as "federally enacted," the Hospital ignored both the record in this case as well as the operational aspects of Medicaid law.[40]  The fact that the CPT codes are part of the

[39]When this matter was before the circuit court, the Hospital sought to buttress its position by stressing that medical services performed by a physician at a hospital fall within the parameters of the federal definition of "physicians' services."  *See* 42 U.S.C. § 1396d(a)(5)(A); 42 C.F.R. § 440.50.

[40]*See supra* note 21.  A careful reading of the record in this case demonstrates that the AMA, as per the parties' stipulation, is the body who establishes the CPT codes.  And while the CMS, the body charged with administering Medicaid claims, does employ a coding system for processing claims which has two levels, Level I being the CPT codes and Level
(continued...)

17

Medicaid billing structure does not alter the AMA origins of those codes and, more importantly, it does not codify the CPT codes into federal law. And, while it may suit the Hospital's purposes to characterize the CPT codes as being encapsulated within the federal definitions of "physicians' services," this contention is nothing more than sophistry.

Upon our careful examination of the record against the applicable statutory and regulatory provisions, we are compelled to conclude, and now so hold, that a hospital's provision of health care services, such as its physical facility; staff; medical equipment; drugs; and other incidental supplies typically regarded as overhead, to physicians not employed by the hospital does not come within the purview of "physicians' services" as that term is defined for purposes of the West Virginia Health Care Provider Tax Act. Not only do we agree with the circuit court's conclusion that the overhead items at issue do not qualify as "physicians' services" under the Act, but we similarly concur with its conclusion that the health care provider tax is being uniformly imposed.[41]

---

[40](...continued)
II being items not covered by the CPT codes, it is nonetheless incorrect to claim that the federal government "enacted" the CPT codes.

[41]In rejecting the Hospital's lack of uniformity contention, the trial court determined that the tax was being uniformly imposed as all "inpatient services" are taxed at the same rate; all "outpatient services" are taxed at the same rate; and all "physicians' services" are taxed at the same rate. The Hospital's argument hinged on persuading us that the overhead items at issue had been wrongly excluded from the "physicians' services" category and thus taxed in a manner inconsistent and not uniform to other items qualifying as "physicians' services."

18

**IV. Conclusion**

Having determined that the trial court did not commit error in upholding the decision of the Office of Tax Appeals, the decision of the Circuit Court of Ohio County is affirmed.

Affirmed.

19