IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2025 Term

_____

No. 24-206

_____

FILED

**November 12, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE H.B., R.B., B.S., P.S., O.S., & I.S.

_____

Appeal from the Circuit Court of Boone County
The Honorable Stacy Nowicki-Eldridge, Judge
Civil Action Nos. CC-03-2023-JA-15, CC-03-2023-JA-16,
CC-03-2023-JA-17, CC-03-2023-JA-18, CC-03-2023-JA-19, CC-03-2023-JA-20

AFFIRMED, IN PART, AND
VACATED AND REMANDED, IN PART

_____

Submitted: October 7, 2025
Filed: November 12, 2025

Timothy P. Gibson, Jr., Esq.
Chief Public Defender
Public Defender Corporation
Madison, West Virginia
Attorney for the Petitioner Mother

John B. McCuskey, Esq.
Attorney General
Heather L. Olcott, Esq.
Assistant Attorney General
Matti F. Shuler, Esq.
Assistant Solicitor General
Charleston, West Virginia
Attorney for the Respondent
Department of Human Services

Catherine Bond Wallace, Esq.
ChildLaw Services, Inc.
Princeton, West Virginia
Guardian ad litem for Minor Children

JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.     "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syllabus Point 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.     "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3. "In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W. Va. Code [§ 49-4-604], it must hold a hearing under W. Va. Code [§ 49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syllabus Point 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983).

4. "Specific findings of fact explaining how each child's health and welfare is being harmed or threatened by the abusive or neglectful conduct of the parties named in the petition are a statutory prerequisite for the circuit court to proceed to the dispositional phase, not a requirement for establishing or maintaining subject matter jurisdiction. To the extent that Syllabus Point 3 of *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023), holds otherwise, we expressly overrule that portion of Syllabus Point 3." Syllabus Point 4, *In re R.M.*, ___ W. Va. ___, ___ S.E.2d ___ (W. Va. November 12, 2025).

5. "Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires a stipulated adjudication to include both '(1) [a]greed upon facts supporting court involvement regarding the respondent['s] problems, conduct, or condition' and '(2) [a] statement of respondent's problems or deficiencies to be addressed at the final disposition.'" Syllabus Point 3, *In re Z.S.-1*, 249 W. Va. 14, 893 S.E.2d 621 (2023).

6. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

7. "Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under [W. Va. Code § 49-1-201]." Syllabus Point 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

8. "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus Point 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

9. "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [W. Va. Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives

iii

when it is found that there is no reasonable likelihood under [W. Va. Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

**BUNN, Justice:**

The petitioner, A.B. ("Mother"), appeals the March 22, 2024 order of the Circuit Court of Boone County terminating her custodial rights to H.B. and her parental rights to R.B., B.S., P.S., O.S., and I.S.[1] On appeal, Mother argues that the circuit court erred by finding that the West Virginia Department of Human Services ("DHS")[2] made reasonable efforts to reunify the family and failing to order the least restrictive dispositional alternative available. While not raised by Mother on appeal, in its response brief the DHS conceded that the circuit court erred in adjudicating H.B., R.B., B.S., O.S., and I.S. because Mother's stipulation related to neglectful conduct specific to only P.S. The DHS maintains that the adjudication and termination were proper as to P.S. We conclude that the circuit court erred in adjudicating H.B., R.B., B.S., O.S., and I.S. as abused and neglected based upon Mother's stipulation to medical neglect of P.S., but find no error in the termination of Mother's parental rights to P.S. Consequently, we affirm the circuit court's termination of Mother's parental rights to P.S. but vacate the adjudicatory and dispositional orders as they relate to the other children at issue in this appeal and remand for further proceedings.

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] Pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the DHS.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

Approximately four years prior to the filing of the abuse and neglect petition at issue in this case, P.S. underwent surgery to remove an abscess from the back of her ear. The doctor informed Mother that P.S. needed additional medical care; however, Mother failed to take P.S. to any follow-up appointments. P.S.'s ear issues worsened, and by February 2023, P.S.'s ear canal and ear drum eroded, resulting in hearing loss.

In March 2023, the DHS filed a petition against Mother alleging that she medically neglected P.S. by failing to obtain follow-up medical care after the ear surgery. The DHS also asserted that Mother medically, emotionally, and chronically neglected all the children in the home, T.B., H.B., R.B., B.S., O.S., P.S., and I.S.,[3] and that she used marijuana. Finally, the DHS recounted Mother's extensive Child Protective Services ("CPS") history and alleged that her parental rights to another child had been previously terminated, due to lack of contact with that child and her failure to appear or participate in the resulting abuse and neglect proceedings.[4]

---

[3] By the conclusion of the abuse and neglect proceedings, T.B. turned eighteen years old, and therefore, is not at issue in this appeal.

[4] In that abuse and neglected proceeding, another circuit court found that Mother abandoned the other child.

In the instant case, at an adjudicatory hearing in August 2023, Mother stipulated only to medical neglect of P.S. Specifically, she admitted to missing P.S.'s medical appointments "to such an extent that it led to an infection which caused hearing loss for this child." The circuit court thereafter adjudicated *all* children in the home as abused and neglected and Mother as an abusing and neglecting parent. Upon Mother's written motion, the court granted her a six-month post-adjudicatory improvement period.[5] Mother initially participated in some services and appeared to be doing well in her improvement period, and several of the children were physically returned to her home while remaining in the legal custody of the DHS.[6] However, Mother tested positive for amphetamines in October 2023.

In early November 2023, the DHS submitted a court summary explaining that Mother had informed the DHS that there were issues with her service provider,

---

[5] The terms of the improvement period required Mother to: (1) meaningfully participate in life skills classes; (2) meaningfully participate in individual therapy, as well as family therapy; (3) undergo a mental hygiene assessment and follow the directives therefrom; (4) meaningfully participate in this case with counsel as well as the DHS; (5) comply with CASA services; (6) obtain stable and appropriate housing; (7) allow only appropriate persons to reside in the home; and (8) maintain appropriate and legal employment.

[6] While not entirely clear in the record, a November 2023 court summary indicates that Mother had "integrated herself back into the primary caregiver role," received supervision services, and "adapt[ed] to the role well[.]" The summary specifically stated that Mother had "been taking the children to their doctor appointments and ensuring the children's needs [were] being met."

Coalfield Family Services, specifically that the assigned caseworker failed to visit the home regularly. The paperwork indicated that the caseworker was providing services when, in fact, she was not. At a November 6, 2023 review hearing, the DHS informed the circuit court that Coalfield Family Services no longer employed the caseworker in question and assigned a new caseworker to Mother. Subsequently, the DHS switched to a new service provider, Vance Family Services.

On December 21, 2023, the circuit court held an emergency removal hearing where the DHS sought the children's removal from Mother's physical custody because she tested positive for THC, methamphetamines, and amphetamines in a second consecutive positive drug screen. Mother did not attend the hearing, and the court granted the emergency removal. As of a January 2024 review hearing, Mother had stopped drug screening, appearing for review hearings, and communicating with the DHS. The court subsequently scheduled the matter for disposition.

The circuit court held a dispositional hearing in March 2024. Mother did not attend but was represented by counsel. Mother's counsel moved to continue the hearing, but the court denied the motion noting that Mother had not appeared for several of the previous hearings and had essentially "disappeared for the last four months without explanation." The court heard testimony from a CPS worker who explained that, after Mother's positive drug screen in October 2023, he scheduled a multidisciplinary treatment

4

team ("MDT") meeting. While Mother attended the meeting, she refused to admit that she had a substance abuse issue, stating that "it was a lie." According to the CPS worker, the MDT offered Mother substance abuse treatment services and Mother "said . . . she was done and [the CPS worker had not] heard from her since."

The circuit court then terminated Mother's custodial rights to H.B.[7] and parental rights to R.B., B.S., O.S., P.S., and I.S. The court found that Mother became "so disengaged that she [did not] bother showing up to court" and that her absence from the proceedings "couple[d] . . . with the drug screen and the aggravated circumstances that exist in this case"[8] demonstrated that Mother was unwilling to comply with the terms of the improvement plan and could not remedy the circumstances that led to the filing of the petition. The court further found that the DHS made reasonable efforts to achieve reunification but that "the [DHS] is unable to provide services for someone who doesn't show up to take advantage of those services." The court found termination was necessary

---

[7] The court did not terminate Mother's parental rights to H.B. due to H.B.'s age and wishes regarding his mother.

[8] While the circuit court made this statement at the dispositional hearing, the record is unclear if the court made the finding that there were aggravated circumstances in this matter. We note that the DHS's abuse and neglect petition alleged that Mother "has neglected the respondent children by aggravated circumstances of chronic neglect." In addition, Mother's parental rights to another child had been terminated in a previous abuse and neglect case.

for the children's welfare, in the children's best interests, and that there were no reasonable, available, or less drastic dispositional alternatives.[9]

## II.

## STANDARD OF REVIEW

We review a circuit court's factual determinations and legal conclusions in an abuse and neglect case pursuant to the following well-established standard:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Furthermore, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

---

[9] H.B. and R.B.'s father's parental rights and O.S.'s father's parental rights had been terminated; B.S., P.S., and I.S.'s father retained his parental rights.

## III.

## DISCUSSION

Before we reach the merits of Mother's assignments of error, we must first address the DHS's confession that the circuit court erred in proceeding to disposition due to a lack of specific adjudicatory findings explaining how each child was harmed or threatened by Mother's conduct. Although we find no subject matter jurisdictional defect, we conclude that the circuit court nonetheless erred in adjudicating H.B., R.B., B.S., O.S., and I.S. based upon Mother's stipulation to medical neglect of only P.S. Then, addressing Mother's assignments of error regarding termination of her parental rights to P.S., we find that the circuit court did not err.

### *A. Adjudication*

Mother did not challenge her adjudication as to any of the children on appeal, yet in its response brief, the DHS conceded that the circuit court failed to make sufficient findings of fact and conclusions of law to support Mother's adjudication as to H.B., R.B., B.S., O.S., and I.S. Specifically, although the DHS asserted allegations of abuse and neglect regarding all children in the petition, Mother stipulated only to medical neglect of P.S. and the DHS did not introduce any additional evidence relating to abuse and/or neglect of the other children. Despite Mother's stipulation encompassing allegations concerning only P.S., the circuit court adjudicated H.B., R.B., B.S., O.S., and I.S. as abused and neglected children, but did not make any factual findings related to those children. The

7

DHS, therefore, alleges that the circuit court lacked subject matter jurisdiction to proceed to disposition to all children, except for P.S.[10] While we find that the circuit court did not lack subject matter jurisdiction, this Court nonetheless concludes that the circuit court erred by substantially frustrating and disregarding the applicable abuse and neglect statutes and rules regarding adjudication as to H.B., R.B., B.S., O.S., and I.S.

West Virginia Code § 49-4-601 (eff. 2019), in relevant part, provides that the circuit court must hold an adjudicatory hearing and at the hearing's conclusion,

> the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court.[11]

(Footnote added). In support of its contention that the circuit court lacked subject matter jurisdiction to proceed to disposition, the DHS relies on Syllabus Point 3 of *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023), where we held, in part, that to exercise subject matter jurisdiction in an abuse and neglect matter following adjudication, the circuit court must have made specific factual findings at the adjudicatory stage of the proceedings regarding the abuse and/or neglect "explaining how each child's health and welfare [was] being

---

[10] Mother, in her reply brief, agreed with the DHS's position that there was no jurisdiction as to those children.

[11] We note that West Virginia Code § 49-4-601 was amended in 2025; however, the amendments have no impact on this case or the statutory language at issue in this matter.

8

harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition[,]" and requiring "specific findings" as to each named child.

For years prior to *In re B.V.*, this Court made clear that the circuit court was required to make a determination of abuse and/or neglect to justify the continuation of the matter to disposition:

> In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W. Va. Code [§ 49-4-604], it must hold a hearing under W. Va. Code [§ 49-4-601], and determine "whether such child is abused or neglected." *Such a finding is a prerequisite to further continuation of the case*.

Syl. Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983) (emphasis added). The *T.C.* Court further explained that the initial determination's primary purpose "is to protect the interest of all parties and to justify the *continued jurisdiction* under [our applicable abuse and neglect statutes]." *Id*. at 50, 303 S.E.2d at 688 (emphasis added).

The Court, however, has recently clarified that "this 'continued jurisdiction' is not tantamount to subject matter jurisdiction in the traditional sense but rather reflects the court's statutory authority to proceed to the next steps in the statutory scheme." *See In re R.M.*, No, 24-357, ___ W. Va. ___, ___ S.E.2d ___ (W. Va. November 12, 2025). We further concluded that "the factual findings regarding the determination at adjudication are mandatory under the applicable statutes and rules, but the findings are not required for a

9

court to maintain or establish subject matter jurisdiction to consider the case. *See* W. Va. Code § 49-4-601." *Id.* at ___, ___ S.E.2d at ___. Consequently, we held that

> Specific findings of fact explaining how each child's health and welfare is being harmed or threatened by the abusive or neglectful conduct of the parties named in the petition are a statutory prerequisite for the circuit court to proceed to the dispositional phase, not a requirement for establishing or maintaining subject matter jurisdiction. To the extent that Syllabus Point 3 of *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023) holds otherwise, we expressly overrule that portion of Syllabus Point 3.

Syl. Pt. 4., *id*. Accordingly, the circuit court was not deprived of subject matter jurisdiction in this matter.

This conclusion does not end our inquiry, though, because "[e]ven in light of our holding regarding subject matter jurisdiction, to proceed to disposition, a circuit court must still comply with all applicable statutory and rule requirements." *In re R.M.*, ___ W. Va. at ___, ___ S.E.2d at ___. As stated above, West Virginia Code § 49-4-601, in relevant part, provides that at the conclusion of the mandatory adjudicatory hearing, the court must determine whether the child at issue is abused and/or neglected based upon the evidence presented and "shall make findings of fact and conclusions of law" regarding that determination. In addition, Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires the court to make findings of fact regarding whether the child is abused and/or neglected at the adjudicatory stage and thereafter, enter an order setting forth those findings:

10

At the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i). The court shall enter an order of adjudication, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing, and the parties and all other persons entitled to notice and the right to be heard shall be given notice of the entry of this order.

Therefore, based on both the statutory scheme and our rules, the circuit court must make a threshold determination of whether the children were abused and/or neglected and must make findings of fact, based on clear and convincing evidence, to support that determination.

Because Mother entered a stipulation regarding her conduct in this matter as to one of the children at issue, we also consider the applicable rules for stipulations. Rule 26 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings allows a parent, custodian, or guardian to enter a stipulation regarding the alleged abuse and/or neglect during the adjudicatory phase of the proceedings. To enter a stipulation that supports proper adjudication, it must contain certain information:

Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires a stipulated adjudication to include both "(1) [a]greed upon facts supporting court involvement regarding the respondent['s] problems, conduct, or condition" and "(2) [a] statement of respondent's problems or deficiencies to be addressed at the final disposition."

11

Syl. Pt. 3, *In re Z.S.-1*, 249 W. Va. 14, 893 S.E.2d 621 (2023); s*ee also* W. Va. R. P. Child Abuse & Neglect Proc. 26(a).

Here, Mother stipulated to medical neglect of only one child, P.S., and did not stipulate to any abusive and/or neglectful conduct toward H.B., R.B., B.S., O.S., or I.S. Furthermore, the DHS did not present evidence at the adjudicatory hearing as to the other children. Accordingly, the court's adjudication properly encompasses the remaining children only if Mother's stipulated medical neglect of P.S. may be imputed to all children in the home. Under the circumstances of this case, we find that it cannot.

The abuse and neglect statutes define "abused child" and "neglect child" in separate and distinct ways. Relevant to this matter, an "[a]bused child," is a child whose health or welfare is being harmed or threatened by:

> [a] parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, *physical injury or mental or emotional injury* upon the child *or another child in the home*. Physical injury may include an injury to the child as a result of excessive corporal punishment; [or] . . . [s]exual abuse or sexual exploitation[.]

W. Va. Code § 49-1-201 (eff. 2018), in part (emphasis added).[12] However, a "[n]eglected child," as statutorily defined, includes a child

---

[12] We note that West Virginia Code § 49-1-201 was amended in 2025; however, the amendments have no impact on this case or the statutory language at issue in this matter.

12

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian *to supply the child with necessary* food, clothing, shelter, supervision, *medical care*, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]

*Id.* § 49-1-201, in part (emphasis added).

Considering these definitions, only the statutory definition of an abused child includes "another child in the home." The definition of neglect contains no such language. We have held that "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968); *see also* Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548*, *Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). Moreover, "'[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 312, 465 S.E.2d 399, 414 (1995) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992)). Therefore, the statutory definition of an abused child allows the abuse of one child to be automatically imputed to other children in the home, but the statutory definition of a neglected child does not.

Our prior case law supports this reading of the statute. In considering whether a child is abused and/or neglected, we have imputed abuse of one child to other children in the home. Based upon the statutory language,[13] we have expressly held that a child who resides in a home where physical or sexual abuse of another child took place, even if that first child was not a direct victim, still meets the definition of an abused child because that child is at risk of abuse:

> Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under [W. Va. Code § 49-1-201].

Syl. Pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995). Accordingly, the cases where the Court has applied this Syllabus Point have exclusively involved abuse, including physical, sexual, or emotional abuse. *See, e.g.*, *In re B.S.*, No. 21-0104, 2021 WL

---

[13] While this Syllabus Point was based upon a previous version of the statute, the language is substantially the same:

> W. Va. Code, 49-1-3(a) (1994), . . . states, in part: "'Abused child' means a child whose health or welfare is harmed or threatened by:
>
> "(1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child *or another child in the home*[.]

*In re Christina L.*, 194 W. Va. 446, 451-52, 460 S.E.2d 692, 697-98 (1995).

2557328, at *2, 2 n.2 (W. Va. June 22, 2021) (memorandum decision) (noting that physical abuse of one child rendered other children in the same home "abused children within the meaning of the West Virginia Code" as they were at risk of abuse).[14] Because the statutory definition of abuse specifically states that abuse can be automatically imputed from one child to others in the home, and the neglect statute does not contain the same language, neglect of one child may not be automatically imputed to other children in a home under the current statutory scheme.[15]

Recognizing this statutory limitation on imputing neglect from one child to others, we now apply this principle to the adjudication of H.B., R.B., B.S., O.S., and I.S.

---

[14] *See also* In re M.M., No. 24-313, 2025 WL 1307837, at *2 n.5 (W. Va. May 6, 2025) (memorandum decision) (concluding that there was no error in adjudicating several children as abused based on the petitioner's adjudication for sexually abusing another child in the home); *In re L.M.-1*, No. 23-6, 2024 WL 1620981, at *3 (W. Va. Apr. 15, 2024) (memorandum decision) (finding that because petitioner physically injured one child in the home where two others resided, the circuit court properly found the two other children to be abused children because of the risk of harm that physical abuse posed).

Courts have also found imputed emotional abuse based upon the statutory language. *See* W. Va. Code § 49-1-201; *In re K.S.*, No. 15-0051, 2015 WL 3687718, at *3 (W. Va. June 15, 2015) (memorandum decision) (finding no error in circuit court's decision to impute the emotional abuse of one child to another child in the home).

[15] Nothing in this opinion should be read to indicate that a circuit court may not find a child neglected in those instances where the home environment or other specific circumstances demonstrate that a parent's neglect of the one child harms or poses a threat of harm to another child in the home. The circuit court may adjudicate other children as neglected based upon specific factual findings which connect those environmental or other circumstances to harm or a threat of harm to those other children in the home.

Here, following Mother's stipulation, the circuit court found that Mother "knowingly, intelligently, and voluntarily admitted to neglecting the minor child, [P.S.] by failing to attend the child's doctor appointments which resulted in an ear infection and permanent hearing loss." With no other findings, the court determined that Mother was an abusive and neglectful parent and that *all* the children in the home were abused and neglected. Importantly, the court made no specific findings regarding (1) how Mother abused or neglected the other children, or (2) that the medical neglect of P.S. constituted "abuse" under the statutory definition such that it may be automatically imputed to other children in the home. Because Mother stipulated only to certain conduct concerning P.S. and the DHS did not put forth any additional evidence, the court was constrained as to what it could find based upon the four corners of the stipulation. To the extent that the circuit court's adjudicatory order cursorily found P.S. to be an abused child, it was in error because Mother stipulated only to medical neglect of P.S. and the DHS presented no additional evidence that would support a finding that P.S. was abused. Considering the circuit court's findings, the statutory definitions of an abused and neglected child, and our prior case law applying those statutory definitions, under the specific circumstances presented in this matter, the medical neglect of P.S. cannot be imputed to other children in the home, and Mother's stipulation applies only to P.S. Consequently, the circuit court did not properly adjudicate H.B., R.B., B.S., O.S., and I.S. as abused or neglected children.

16

While Mother failed to raise this issue on appeal, we nevertheless find that, due to this absence of a proper adjudication, the circuit court substantially frustrated the process by disregarding the applicable statutes and rules regarding its adjudication and ultimate termination of Mother's custodial rights to H.B. and parental rights to R.B., B.S., O.S., and I.S. This Court has held that,

> Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order."

Syl. Pt. 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001). We have found similar disregard of the applicable rules and statutes to be a substantial frustration of the abuse and neglect process which requires vacation and remand for compliance. For example, in *In re E.T.*, the circuit court failed to hold an adjudicatory hearing and, in turn, failed to make a determination on the record "whether [the] petitioner was an abusing parent or if the children were abused or neglected children, as required by West Virginia Code § 49-4-601." No. 17-1085, 2018 WL 1773180, at *3 (W. Va. Apr. 13, 2018) (memorandum decision). Despite the petitioner in that case failing to raise the issue on appeal, we found that the adjudicatory defects were "obvious in the record" and that these "failure[s] constitute[] a substantial disregard for the applicable rules and statutes such that

17

vacation of the resulting dispositional order [wa]s warranted." *Id.*[16] Because here, Mother's stipulation was deficient as to H.B., R.B., B.S., O.S., and I.S., the court made no findings regarding abuse or neglect of P.S. or the other children beyond her stipulation, and the DHS presented no other evidence as to any abuse or neglect as to them, we similarly find that the circuit court substantially frustrated and disregarded the applicable abuse and neglect statutes and rules. Furthermore, we previously explained that

> [p]rocedurally, these various directives [set forth in the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes] also provide the necessary framework for appellate review of a circuit court's action. Where a lower court has not shown compliance with these requirements in a final order, and such cannot be readily gleaned by this Court from the record, the laudable and indispensable goal of proper appellate review is thwarted.

*In re Edward B.*, 210 W. Va. at 632, 558 S.E.2d at 631. As this Court has stated, "[a]dequate findings must be made in order to protect the rights of litigants and to facilitate review of the record by an appellate court." *Id.* (quotations and citation omitted). We, therefore, vacate the adjudicatory and dispositional orders as they relate to H.B., R.B., B.S., O.S., and I.S.

---

[16] *See also In re S.J.*, No. 19-0702, 2020 WL 3172863, at *6 (W. Va. June 15, 2020) (memorandum decision) (finding that "the circuit court plainly and substantially disregarded and frustrated the orderly process of adjudication" by never concluding an adjudicatory hearing or entering an adjudicatory order required by W. Va. Code § 49-4-601(i) and W. Va. R. P. Child Abuse & Neglect Proc. 27); *In re E.C.*, No. 17-1050, 2018 WL 1773425, at *3-4 (W. Va. Apr. 13, 2018) (memorandum decision) (concluding that the circuit court substantially frustrated and disregarded the applicable rules and statutes when it accepted the petitioner's deficient stipulation).

18

## B. Termination

Because Mother stipulated to medical neglect of P.S. and the circuit court's adjudication of P.S. was proper, we must address Mother's assignments of error related to the termination of her parental rights to P.S. Mother contends that the circuit court erred by finding that the DHS made reasonable efforts to reunify the family and by terminating her parental rights to P.S., asserting it was not the least restrictive dispositional alternative available. There is no merit to these contentions.

Mother first argues that the circuit court erred by finding that the DHS made reasonable efforts to achieve reunification. West Virginia Code § 49-4-601(d) generally requires the DHS to "provide supportive services in an effort to remedy circumstances detrimental to a child."[17] Furthermore, West Virginia Code § 49-4-604(c)(6)(C)(iii) and (iv) (eff. 2020) require the circuit court to consider whether the DHS made reasonable efforts to preserve and reunify the family prior to terminating a parent's parental rights. Certainly, DHS has a general "duty to make reasonable efforts to reunify a family required by state or federal law." *Id.* § 49-4-610(5) (eff. 2015). Still, during an improvement period,

---

[17] Pursuant to West Virginia Code § 49-4-604(c)(7)(A), the DHS is not required to make reasonable efforts to preserve the family if the circuit court determines that "[t]he parent has subjected the child . . . to aggravated circumstances[.]" To the extent that the court found that aggravated circumstances existed, the DHS was not required to make reasonable efforts to preserve the family. *See supra* n.8.

19

the parents or custodians are "responsible for the initiation and completion of all terms of the improvement period." *Id.* § 49-4-610(4)(A).

Mother argues that the DHS failed to present sufficient evidence regarding services offered during Mother's improvement period. The record, however, demonstrates that the DHS did, in fact, offer services to Mother, such as substance abuse treatment, but Mother either declined the services or stopped participating. She also asserts that the DHS is at fault for her lack of improvement because an employee of the initial provider assigned to her committed fraud by not actually providing the services and falsifying records. In light of these allegations during the proceeding, however, as soon as Mother informed the DHS of the caseworker's conduct, the DHS contacted the provider and a new caseworker was assigned. In addition, the DHS subsequently assigned an entirely new service provider to Mother's case and its caseworker provided services, conducted drug testing, and performed home visits. Accordingly, we conclude that the circuit court did not err in finding that the DHS made reasonable efforts to achieve reunification.

Next, Mother argues that the circuit court erred by terminating her parental rights when there were less restrictive dispositional alternatives, including a post-dispositional improvement period. West Virginia Code § 49-4-604(e), provides, in part, that "[t]he court may, as an alternative disposition, allow the parents or custodians an improvement period not to exceed six months." While "West Virginia Code

§ [49-4-604(e)] authorizes a circuit court to grant a dispositional improvement period, it does not mandate an improvement period." *In re J.D.*, No. 13-1072, 2014 WL 1302505, at *2 (W. Va. Mar. 31, 2014) (memorandum decision) (footnote omitted). As stated above, the record shows that while Mother initially progressed in her post-adjudicatory improvement period, she subsequently had positive drug screens, failed to participate in services, and disappeared from the proceedings. We, therefore, find no error in the court's refusal to order a post-dispositional improvement period.

Mother further insists that because the permanency plan for P.S. is to reside with the non-abusing father, a less restrictive disposition would have been appropriate.[18] We have consistently disagreed with this position. As this Court has stated, West Virginia

---

[18] We note that while Mother frames her argument that she should have received a disposition pursuant to West Virginia Code § 49-4-604(c)(5), she is, in fact, asserting that only her custodial rights should have been terminated. As this Court has stated, a disposition under § 49-4-604(c)(5) is not the same as termination of custodial rights, and it specifically does not encompass when a child is with a non-offending parent—only when a child is temporarily placed with a guardian or the DHS. *See In re R.G.*, No. 20-0509, 2021 WL 2366886, at *1 n.4 (W. Va. June 9, 2021) (memorandum decision) ("While the parties label the child's placement with his father at the conclusion of the mother's proceeding as a section 5 disposition, the child was not placed in a guardianship—a natural fit parent is not a guardian appointed by the court. Because the child was placed in the 'permanent sole custody of the nonabusing parent,' it appears that the circuit court conducted the mother's disposition under § 49-4-604(c)(6) but did not terminate her parental rights."); *In re K. S.*, 246 W. Va. 517, 524 n.13, 874 S.E.2d 319, 326 n.13 (2022) ("[B]ecause the children were placed with their biological fathers, the parties appear to have been contemplating a simple termination of petitioner's *custodial* rights, rather than a guardianship or DHHR custody. Such a disposition would appear to be more appropriately governed by subsection 604(c)(6), rather than (c)(5)."). Here, the court placed P.S. with her non-abusing father.

Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Moreover, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.* This Court has further explained that

> Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [W. Va. Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [W. Va. Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected.

Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Here, Mother's complete disregard for the proceedings and failure to respond to offered services supported the court's decision to terminate her parental rights. Consequently, we find no error as to the termination of Mother's parental rights to P.S.

# IV.

## CONCLUSION

For the foregoing reasons, the Circuit Court of Boone County's March 22, 2024 dispositional order is affirmed with respect to the termination of Mother's parental rights to P.S. The order is vacated insofar as it terminates Mother's custodial rights to H.B.

22

and parental rights to R.B., B.S., O.S., and I.S. Furthermore, the circuit court's September 12, 2023 adjudicatory order is affirmed with respect the adjudication of P.S., but vacated as to H.B., R.B., B.S., O.S., and I.S. We remand this matter for further proceedings consistent with this opinion regarding H.B., R.B., B.S., O.S., and I.S., including reopening adjudication as to H.B., R.B., B.S., O.S., and I.S. The Clerk is directed to issue the mandate contemporaneously therewith.

Affirmed, in part, vacated, in part, and remanded.